[No. 38017.   Department One.   December 30, 1965.]

THE STATE OF WASHINGTON, *Respondent*, v. G. R. SMITHERS, *Appellant*.*

*Arthur E. Sherman, Jr.,* for appellant (Appointed counsel for appeal).

*Herbert E. Wieland,* for respondent.

*Reported in 409 P.2d 463.

BARNETT, J.†—By an amended information filed in the Superior Court of Pacific County, appellant G. R. Smithers was charged with five counts of grand larceny and one count of petit larceny, all by color and aid of check. At a jury trial, he was convicted of four counts of grand larceny and two counts of petit larceny, and appeals from the judgments and sentences pronounced against him.

The checks were issued to various payees in Pacific County during the latter part of 1961 and in January of 1962. They ranged in amount from approximately $11 to $50. Appellant's several assignments of error go to the admission and exclusion of certain evidence, and to the sufficiency of the evidence in general.

■ Two of the counts upon which appellant was convicted concern checks drawn by him on banks in Indiana and Utah. The evidence presented by the state on these counts consisted of testimony by the payees and their agents, and the admission of the returned checks marked "no account" into evidence over appellant's objection. There was no direct testimony that appellant did not, in fact, have an account in the Indiana and Utah banks from which he purported to draw. We hold that the state failed to produce sufficient evidence from which a jury could determine that appellant, beyond a reasonable doubt, issued the two checks knowing that no funds were available to his order in the drawee banks. It is incumbent upon the state to prove the lack of funds in the drawee bank. This cannot be done by showing only that the check was returned marked "no account" to the payee, and that the payee's own account was not credited with the amount of the check. As the Missouri court said in an identical factual situation in *State v. Scott*, 230 S.W.2d 764, 767 (Mo. 1950):

There if (sic) no proof as to who placed the words "No Acct." on the check. It does not appear when they were placed there or for what purpose. The appearance of those words on the check cannot substitute for any neces-

---

†Judge Barnett is serving as a judge pro tempore of the Supreme Court pursuant to Art. 4, § 2(a) (amendment 38), state constitution.

> sary proof. . . . For all that appears in the testimony here defendant may have had funds in that bank, and he may have known he had funds there. Nothing appears to the contrary.
>
> . . . . we cannot presume defendant had no funds in the Leoti bank or that there was such a bank.

A California decision reached the same conclusion on facts even stronger for the state. The appellant in *People v. Frey,* 165 Cal. 140, 131 Pac. 127 (1913), was tried and convicted under a bad-check statute very similar to ours. Prior to trial, appellant had confessed that there were no funds subject to his order in the drawee bank at the time of issuance. The narrow issue on appeal was whether the state showed enough independent corroborating evidence to allow proof of the confession. This independent evidence consisted of testimony by various bank officers to the effect that the check had been sent through the regular collection channels in the usual manner, and that it had been returned marked "no account;" that it was common banking practice for the drawee bank to mark a check "no account" and return it to the sender when in fact the drawer had no account at that bank. But there was no testimony by anyone connected with the drawee bank, or who had direct knowledge of the writing of the "no account" notation on the check. The court held that the state had failed to prove the corpus delicti of the offense, and that the ruling of the trial court in permitting proof of the confession was reversible error. In its opinion, the court said at 144:

> [S]ince the legislature has seen fit to make proof of a negative proposition,—namely, the nonexistence of funds or credit, an essential element of a crime, we cannot see our way to a conclusion authorizing hearsay evidence to establish that constituent part of the offense.

Here, also, we conclude that the evidence is insufficient. The notations on the returned checks went unauthenticated and unexplained. No direct testimony was offered to show that appellant lacked funds in the drawee banks when he issued the checks.

We are therefore constrained to the view that appellant's

convictions on counts No. 1 and No. 3, being reached on insufficient evidence, must be reversed.

■ We come now to the question of whether there was sufficient evidence to entitle a jury to find appellant guilty on the remaining four counts of the information. The four checks involved in these counts were all drawn on the First Security Bank of Twin Falls, in Idaho. In each instance, there was direct testimony that appellant made the check out in the presence of the witness, either the payee or his agent. The checks were identified and put into evidence. An officer of the drawee bank testified that he had searched the records upon the presentment of these checks; that he found no record that appellant had an account in that bank; that he marked the checks with an "R," meaning "return;" and that the checks were returned. There is here sufficient evidence to support a determination by the jury that appellant issued the checks at a time when he had no account with the drawee bank. Whether appellant issued the checks with the *knowledge* of the lack of funds and with an *intent to defraud* is also a question for the jury, to be determined by the acts of the parties and circumstances of the case. Appellant contended at trial that, due to his intoxication at the times he issued the checks, he did not have the capacity to form the requisite fraudulent intent. RCW 9.01.114 provides that voluntary intoxication is a factor to be considered in determining the purpose, motive or intent of the accused. The question of the effect of appellant's intoxication upon the formation of the intent to defraud is an issue for the jury. *State v. Mitchell,* 65 Wn.2d 373, 397 P.2d 417 (1964). Appellant's theory was adequately presented to the jury and rejected by it. A review of the record reveals ample evidence to support a finding that appellant had knowledge of the lack of funds, and that he issued the checks with the intent to defraud the payees.

■ Appellant assigns error to a ruling by the trial court permitting the state to elicit testimony on cross-examination of appellant that he had been convicted of crimes of burglary and larceny in 1932 and 1933. RCW 10.52.030

provides that: "Every person convicted of a crime shall be a competent witness in any civil or criminal proceeding, but his conviction may be proved for the purpose of affecting the weight of his testimony . . . by his cross-examination . . . ." Appellant argues that, despite the statute, the testimony of these prior convictions should not have been allowed because of their remoteness in time. In *State v. Bezemer,* 169 Wash. 559, 570, 14 P.2d 460 (1932), we disposed of the same argument by stating dogmatically:

> It will be observed that there is no restriction in the language of the statute as to the remoteness of conviction of the crime sought to be charged. It is extensive and comprehensive in its terms.

Appellant also asserts that the trial court erred in permitting the state to question him as to the *nature* of these prior convictions, since they were shown to be of crimes similar to the ones for which he was standing trial. Such testimony, he says, unduly prejudices him in the eyes of the jury. The statute does not distinguish between what convictions may and may not be proved. It says only "his conviction may be proved for the purpose of affecting the weight of his testimony." Appellant would have us qualify the plain meaning of this statute. We will not do so.

In *State v. McCormick,* 145 Wash. 117, 259 Pac. 29 (1927), the converse argument was made. Appellant there, appealing a conviction of larceny, contended that the trial court erred by admitting testimony of prior conviction for a crime which was *not similar* to the crime of larceny. We said at that time, at 118:

> [T]he state may show a former conviction of crime to affect the credibility of a defendant as a witness, and under the rule, a conviction of *any* crime may be shown. (Italics ours.)

We now hold that, under RCW 10.52.030, a witness' credibility can be impeached by proof of a prior conviction, even when that prior conviction was for a crime similar to the one for which the witness is standing trial.

We have examined appellant's remaining assignments of error and have found them to be without merit.

Judgment is affirmed on count Nos. 2, 4, 5 and 6; and reversed on count Nos. 1 and 3.

ROSELLINI, C. J., WEAVER, HUNTER, and HALE, JJ., concur.