[No. 44332. En Banc. May 26, 1977.]

THE STATE OF WASHINGTON, *Respondent,* v. JACK EDWARD MRIGLOT, *Petitioner.*

*Christopher Sutton,* for petitioner.

*Donald Herron, Prosecuting Attorney,* and *Joseph D. Mladinov, Special Counsel,* for respondent.

Hicks, J.—Petitioner Jack E. Mriglot (hereinafter referred to as defendant) was convicted of first–degree forgery for feloniously uttering a check upon which he knowingly forged the payee's endorsement with intent to defraud. He appealed the conviction to the Court of Appeals, assigning as sole error the trial court's failure to give the following involuntary intoxication instruction proposed by defendant:

> If a person is involuntarily under the influence or affected by the use of liquor or drugs, he is excused from any criminal act committed while in said state of intoxication.

The Court of Appeals found no error, holding that the proposed instruction was not a correct statement of the law so the trial court was not required to give it. *State v. Mriglot,* 15 Wn. App. 446, 550 P.2d 17 (1976).

We agree with the Court of Appeals in result, and affirm. Discretionary review was granted solely to clarify what defendant argues, and we believe to be, a misleading discussion of the involuntary intoxication defense.

The Court of Appeals correctly states that voluntary intoxication does not render an act less criminal. Although

it does not excuse the criminality of the act, it may be considered as tending to negate specific intent when intent is a necessary element of a particular offense or degree of offense.[1] The theory is not that voluntary drunkenness excuses the criminal conduct but that, if the offense charged requires a specific intent, the defendant cannot be guilty if he was too intoxicated at the time to have any such intent and had not entertained such intent prior to his intoxication. *See generally* 8 A.L.R.3d 1236 (1966).

The Court of Appeals also correctly states that involuntary intoxication is a complete defense, albeit a disfavored one for reason of its potential for abuse. Since involuntary intoxication acts to excuse the criminality of an act, it must rise to the level of insanity, which in this jurisdiction is determined by the *M'Naghten* test. *See* RCW 9A.12.010. As stated by W. LaFave & A. Scott, *Handbook on Criminal Law* § 45, at 347–48 (1972):

> Involuntary intoxication, on the other hand, does constitute a defense if it puts the defendant in such a state of mind . . . that he does not know the nature and quality of his act or know that his act is wrong, in a jurisdiction which has adopted the M'Naghten test for insanity.

*See generally* R. Perkins, *Criminal Law* 894 *et seq.* (2d ed. 1969).

■ However, as defendant argues, the Court of Appeals' decision fails to note the difference between the burden one bears in asserting involuntary intoxication as a defense to a specific intent crime and the burden one bears in asserting

---

[1]RCW 9.01.114, the statute in effect at the time this case arose, is as follows:

No act committed by a person while in a state of voluntary intoxication shall be deemed less criminal by reason of his condition, but whenever the actual existence of any particular purpose, motive or intent is a necessary element to constitute a particular species or degree of crime, the fact of his intoxication may be taken into consideration in determining such purpose, motive or intent.

This statute has since been repealed and replaced by RCW 9A.16.090 which is identical except that the more general term "particular mental state" has replaced the words "any particular purpose, motive or intent." Whatever significance the amendment has is not relevant to the present inquiry. Voluntary intoxication continues to bear only on specific intent crimes.

involuntary intoxication as a defense to a general intent crime. If carried to its logical conclusion, the reasoning of the Court of Appeals would require a defendant who was involuntarily intoxicated at the time of committing a specific intent crime to prove the same level of intoxication necessary to totally excuse a general intent crime—that is, intoxication so extreme it equates with temporary insanity. However, a defendant to a specific intent charge who was voluntarily intoxicated would only need to show sufficient loss of his faculties such that he could not have formed the requisite intent. This cannot be. If a defendant is so intoxicated (voluntarily or involuntarily) as to be unable to form the requisite intent, he cannot be guilty of a specific intent crime. He need not prove temporary insanity simply because the intoxication happened to be involuntary.

There is no practical difference[2] then between voluntary and involuntary intoxication as to crimes that, by their definition, require proof of a specific intent in addition to proof that the act was committed. In the case at bench, proof of the degree of intoxication, although involuntary, need only be sufficient to demonstrate that defendant lacked the specific intent to defraud.

The distinction between the defenses of voluntary and involuntary intoxication arises in those crimes which require no specific intent. There, as stated by the Court of Appeals, voluntary intoxication is no defense regardless of its extent or the mental state of the defendant. On the other hand, involuntary intoxication is a defense to a general intent crime if the intoxication rises to the level that a defendant is unable to perceive the nature and quality of his act or to tell right from wrong with reference to the act

---

[2]In theory, the two defenses operate differently. Involuntary intoxication excuses the criminal nature of the act. That is, once a defendant has shown that the degree of his involuntary intoxication meets the appropriate insanity test, his criminal capacity is vitiated and the jury never reaches the issue of specific intent. Voluntary intoxication does not excuse the criminality of the act but it can render the defendant incapable of forming the specific intent necessary for conviction of the crime. The practical effect of either defense is the same as to specific intent crimes.

charged. In effect, as pointed out by the Court of Appeals, such condition equates with temporary insanity and it is a valid defense even though the temporary condition exists as a result of intoxication, for the intoxication was involuntary.

■ Defendant Mriglot may take no comfort from the foregoing discussion however, since he did not produce sufficient evidence for the issue of voluntary *or* involuntary intoxication to be submitted to the jury. Unless supported by substantial evidence of intoxication, the issue need not go to the jury. *State v. Tyler,* 77 Wn.2d 726, 466 P.2d 120 (1970). Here, the only evidence of intoxication at the time of the crime was based on defendant's own testimony as follows:

> Q. What happened? A. Well, Rob came over kind of on a social visit and we were drinking a little beer and apparently something was put in my beer that sent me into a tailspin, and I don't have too much more recollection of the next few days. Q. Now, what type of—you say you went into a tailspin. How much time elapsed from when you were first starting to drink until you went into this tailspin? A. Oh, he was there for awhile and then this here thing came about after he had been there for awhile. Q. How long was that? A. Oh, couple hours maybe. Q. How many beers had you had? A. Oh, maybe a half a case.

The checks introduced in evidence were passed over a 2–day period and defendant stated in regard to that lapse of time: "We went many places and did many things; exactly what, I don't remember."

The above evidence is no more than a scintilla. The testimony of defendant's friend, Wilma J. Martin (that defendant appeared upset, unkempt, and that she inferred from what he said that someone had been giving him drugs), was in relation to a period of time *after* the crime and not relevant to his condition at the time of the crime. The expert psychiatric testimony of Dr. Myron Kass was confined to answering hypothetical questions regarding the effect of drugs. This testimony likewise had no bearing on

defendant's condition at the time of the crime as Dr. Kass never examined defendant regarding any matter concerned in the case.

Evidence of intoxication based merely on opinion, unsupported by facts on which to base it, is speculative and conjectural. As such it amounts only to a scintilla, and the issue should not be presented to the jury. It is not error to refuse to submit the defense of intoxication to the jury where it is supported merely by scintilla evidence as distinguished from substantial evidence. *State v. Zamora,* 6 Wn. App. 130, 491 P.2d 1342 (1971).

No error was assigned to the fact that the trial court *did* instruct on intoxication. Neither was error assigned to the fact that the instruction given incorporated involuntary and voluntary together. Although it was probably not error to incorporate the two in this case since forgery is a specific intent crime, we do not approve such practice. We do not develop this issue further. It is clear that the instruction given in no way prejudiced defendant; it undoubtedly worked to his advantage.

The sole error assigned was to the trial court's failure to give defendant's requested instruction. But even had there been ample evidence of defendant's involuntary intoxication at the time of forging the check, it would not have been error for the trial court to refuse the requested instruction. In no jurisdiction in this country is a defendant's criminal conduct excused simply because he is "under the influence" or "affected by" liquor or drugs. The level of intoxication must be extreme enough to meet the jurisdiction's insanity test in order to *excuse* the crime. That standard was not set forth in the defective instruction. A trial court need never give a requested instruction that erroneously states the law. *State v. Twitchell,* 61 Wn.2d 403, 378 P.2d 444 (1963).

Affirmed.

WRIGHT, C.J., and ROSELLINI, HAMILTON, STAFFORD, UTTER, BRACHTENBACH, HOROWITZ, and DOLLIVER, JJ., concur.