[No. 5703-1. Division One. October 9, 1978.]

THE STATE OF WASHINGTON, *Respondent,* v. RICHARD LEE BOYD, *Appellant.*

466

*John G. Ziegler,* for appellant (appointed counsel for appeal).

*Christopher T. Bayley, Prosecuting Attorney,* and *Lee Ann Miller, Deputy,* for respondent.

SOULE, J.—On April 1, 1977, the defendant Richard Lee Boyd was tried before a jury and convicted of robbery in the second degree. On the basis of this conviction and two previous felony convictions, Boyd was tried on May 26, 1977, before a jury and found to be a habitual criminal. Thereafter, he was sentenced to life imprisonment. This appeal followed.

In the early morning of February 2, 1977, Gerald Plith and his taxicab were dispatched to pick up Boyd and one Bradshaw, who directed him to an address in Seattle. A few blocks before arriving at the destination Plith was directed to stop and Bradshaw gave him a 20–dollar bill to pay the

fare. When Plith took out his wallet to make change, Bradshaw tried to take the money from him. Plith testified:

A He started grabbing for the money. I distinctly remember his struggling with me for a few seconds and then he kept saying, "Get the piece. Get the piece. Get the piece." Something was put on the back of my neck that felt like a gun barrel and I stopped resisting.

Q When you had seen them getting in the cab, did you make any observation as to what they were carrying?

A Mr. Boyd had a sack with something in it.

Q After Mr. Bradshaw yelled "Get the piece," what happened?

A I felt the object that felt like a gun barrel against the back of my neck and I said, "Man, don't shoot."

Q Did you actually see a weapon?

A No, but it felt like a gun against the back of my neck.

Q After you told them not to shoot, what happened?

A I stopped resisting. Mr. Bradshaw was in front by this time, and he took the money and the billfold, and they said something about taking off "When we get out of the car." Whereupon they got out of the car and I drove on up on Yesler.

Responding to Bradshaw's imperative "get the piece," Boyd put a metal hotcomb against Plith's neck. Bradshaw took Plith's money, then he and Boyd left the cab.

Bradshaw and Boyd had been drinking before the incident and were arguing in the back seat of the taxicab about another matter when they directed the driver to stop. Boyd testified that there had been no prior discussion regarding a robbery attempt, and that he had no intent to steal Plith's wallet. The court submitted to the jury an instruction relating to voluntary intoxication. RCW 9A.16.090, WPIC 18.10. On the basis of the testimony that Boyd had no intent to rob Plith, his counsel proposed an instruction on simple assault as a lesser included offense. The trial court ruled that simple assault is not a lesser included offense within the charge of robbery in the second degree. This ruling is assigned as error.

Before the habitual criminal proceedings began, Boyd objected to the use of his prior conviction for grand larceny

in 1968 on the basis that he had entered a plea of guilty without knowledge of the sentencing consequences. The court conducted an evidentiary hearing in which Boyd's attorney on the 1968 charge testified that on the basis of a note in his file he could say that the defendant had been told of the maximum sentence before he changed his plea. The transcript of the sentencing proceeding shows that Boyd knew of the prosecutor's recommendation, and of the fact that the judge is not bound by such recommendation. On the basis of the record and the totality of the circumstances, the court overruled the defendant's objection to the use of the grand larceny conviction and the jury verdict resulted in the finding that he is a habitual criminal. Boyd also assigns as error this ruling.

## Lesser Included Offense

Relying on *State v. Bresolin,* 13 Wn. App. 386, 534 P.2d 1394 (1975), Boyd argues (1) that the assault he admits is the same assault alleged by the State as the act constituting the infliction of force or fear necessary to convict of robbery, and that this assault was committed in an effort to protect Plith, and (2) the evidence of his intoxication and his testimony was sufficient so the jury could have found that he was guilty of a simple assault without intent. Therefore, he concludes the jury should have been instructed that simple assault is a lesser included offense within robbery, and the refusal by the trial court to so instruct constitutes error. We do not agree with defendant.

The fallacy in defendant's position lies not in the assertion that the lesser degrees of assault are legally included in the crime of robbery. For the purpose of this decision, we assume that they can be, given appropriate facts, and under some circumstances, this may include even simple assault where the specific intent is not required. *State v. Bishop,* 90 Wn.2d 185, 580 P.2d 259 (1978); *State v. Roybal,* 82 Wn.2d 577, 512 P.2d 718 (1973). The problem with defendant's position is that he assumes, because the court was liberal and gave an instruction on intoxication as a defense,

that the record in fact contains evidence of his intoxication sufficient to create a question for the jury as to whether he was so affected by alcohol that he was incapable of forming a specific intent to rob. We find the record lacks sufficient facts to require either the giving of the instruction on intoxication or the giving of the requested instruction on the lesser included offense of simple assault.

It has long been recognized that a lesser included offense instruction may be proper in the abstract, yet inappropriate in the light of the particular facts. In *State v. Kruger,* 60 Wash. 542, 111 P. 769 (1910), the court observed at page 544:

It was never the intent of the law to submit a possible verdict upon a so-called included crime because included in law. It must be included in fact, and by the facts of the particular case.

*See also State v. Claybourne,* 14 Wn. App. 314, 541 P.2d 1230 (1975).

Although voluntary intoxication is recognized and defined by statute, RCW 9A.16.090, as a factor which may be considered in determining whether a given mental state exists, it is not a favored concept. *See State v. Runnells,* 64 Wn.2d 995, 390 P.2d 1003 (1964); *State v. Miller,* 177 Wash. 442, 462, 32 P.2d 535 (1934). *Cf. State v. Kroll,* 87 Wn.2d 829, 558 P.2d 173 (1976); 22 C.J.S. *Criminal Law* § 68(a) n.35 (1973).

■ An uncritical reading of some of the decisions of this jurisdiction can lead to the mistaken impression that the mere evidence of drinking is automatically enough to require the defense of intoxication to be submitted to the jury. This occurs because the evidence is sometimes not clearly detailed by the opinion, nor the requirements discussed. *See State v. Smithers,* 67 Wn.2d 666, 669, 409 P.2d 463 (1965); *State v. Mitchell,* 65 Wn.2d 373, 397 P.2d 417 (1964); *State v. Norby,* 20 Wn. App. 378, 579 P.2d 1358 (1978).

As explained in *State v. Zamora,* 6 Wn. App. 130, 491 P.2d 1342 (1971), the rule is somewhat more restricted. It

becomes a question for the jury only when and if the proper foundation is laid. In that case, there was evidence that the defendant had been drinking; that he appeared to be drunk; that his speech was slurred; that he did not look normal, yet the court held that it was proper to refuse to give instructions on involuntary intoxication as it affects intent to commit assault in the second degree because there was no substantial evidence to warrant such an instruction. In so holding, the court recognized a threshold test when it said at pages 132, 133 and 134:

> Intoxication "refers to an impaired mental and bodily condition which may be produced either by alcohol, which is a drug, or by any other drug." . . . In searching the record for evidence of intoxication, we search both for evidence of consumption of alcohol or other drugs and *the effect of such consumption upon the defendant's ability to form the requisite intent.* . . . Such evidence must be substantial in character. "Substantial evidence is that character of evidence which would convince an unprejudiced, thinking mind of the truth of the fact to which the evidence is directed." *Arnold v. Sanstol,* 43 Wn.2d 94, 98, 260 P.2d 327 (1953). The determination of whether or not there is substantial evidence is a law question for the court. . . .
>
> Thus, it is common knowledge that one may exhibit symptoms of having consumed alcohol without necessarily losing the capacity to form an intent to do an act. Whether one's capacity to form such an intent has been destroyed depends on how much alcohol is consumed and over what period of time. If, therefore, *there is both evidence of the consumption of alcohol or other drugs and opinion testimony based thereon concerning the existence of intoxication, i.e.,* impaired mental and bodily condition as defined in *State v. Dana, supra* [73 Wn.2d 533, 439 P.2d 403 (1968)], the totality of such evidence is substantial evidence from which it can be found that the defendant was incapable of forming the required intent. *Provins v. Bevis,* 70 Wn.2d at 137–38; *State v. Baker, supra* [56 Wn.2d 846, 355 P.2d 806 (1960)]. If on the other hand, evidence of intoxication is based merely on opinion evidence, unsupported by facts on which to base it, the evidence at best is merely scintilla in character.

*See State v. Carter, supra* [5 Wn. App. 802, 490 P.2d 1346 (1971)]; *State v. Tyler,* 77 Wn.2d 726, 466 P.2d 120 (1970). Scintilla evidence is something less than substantial evidence. It is speculative and conjectural, and does not have the fitness to induce conviction. An issue supported only by scintilla evidence should be withdrawn from the case. . . . It is not error to refuse an instruction supported merely by scintilla evidence, as distinguished from substantial evidence. . . . We know of no reason, why principles stated concerning the quality of evidence required should not apply to the defense of intoxication. That they should so apply is implicitly recognized in *Provins v. Bevis, supra,* and *State v. Baker, supra.*

(Citations omitted; italics ours.)

*Zamora* makes it clear that there must be evidence of two things: one is the fact of drinking and the other is evidence of the effect of the drinking upon the defendant as it relates to his ability to form an intent and although *Zamora* refers to the necessity of opinion evidence, we do not understand this necessarily to mean medical opinion. Lay opinion properly founded and expressed may be sufficient.

*Zamora* is cited with approval in *State v. Mriglot,* 88 Wn.2d 573, 564 P.2d 784 (1977). *Mriglot* bears a similarity to the case before us in that an instruction on involuntary intoxication was in fact erroneously given although the evidence did not meet the requirements of *State v. Zamora, supra.*

*State v. Thompson,* 17 Wn. App. 639, 564 P.2d 820 (1977) also makes it clear that the test of intoxication is not the fact of drinking, but the effect on the drinker. The court said at pages 641–42:

Thompson argues that there was substantial evidence of intoxication raising a serious question as to whether he was capable of formulating the intent necessary to commit first–degree murder. We do not agree.

There is evidence of drinking over a period of many hours: two beers in a tavern while shooting pool in the early afternoon, two beers at a bowling alley, four glasses plus two pitchers of beer at a tavern, two mixed bourbon

drinks at Wylie's home, and a pint of rye whiskey consumed en route to a tavern in Burien. The critical factor, however, is not the quantity of alcohol consumed—rather, it is the intoxication experienced. The only evidence of intoxication was Thompson's assertion that his memory of the drive to the tavern in Burien was "kind of fuzzy" and that he only remembered patches of the drive. This does not constitute substantial evidence of intoxication. Absent substantial evidence of incapacity to formulate the requisite intent for first–degree murder, the trial judge did not err in refusing Thompson's requested instruction, on second–degree murder.

(Citations omitted.)

We regret the necessity of extending this opinion by a detailed recitation of the evidence on drinking, but it is necessary to do so to demonstrate that the evidence in this case is deficient measured by the considerations required in both *Zamora* and *Thompson*. We are unable to find substantial evidence upon which a jury could properly conclude that the defendant was so affected by his drinking that he was incapable of forming specific intent.

On cross–examination, the victim testified only to the following:

Q Would you indicate what there was about his manner or appearance that made you think he might be intoxicated?

A Well, the way he talked, it seemed that he could have been high.

On redirect examination, the following testimony was given:

Q Mr. Plith, when the defendant, Mr. Boyd, was within your view, did he appear to be able to function, or did Mr. Bradshaw have to help him in and out of the cab?

A No. He was fully under his own power when he was walking.

Q Did you say that he was somewhat high or intoxicated?

A Yes, because of the way he talked.

Q Did he say anything that you were not able to understand?

A I fully understood, but his speech was a little bit slurred.

Defendant Bradshaw merely said that they had been drinking. Elaine Boyd, a cousin by marriage, testified:

Q You let Richard in and then Mr. Bradshaw came in also?

A Yes. I didn't want Richard to drink any more or leave the apartment with Gregory Bradshaw. I tried to tell him not to drink any more like because he was already drinking, but I just wanted him to get Gregory out of the house. I just became very tired.

Q Do you know what they were drinking?

A I could only guess.

Q Was there more than one bottle of liquor?

A There must have been three or four. I am not sure.

Q Who made the arrangement for their leaving?

A Well, Mr. Gregory did. I tried to talk to Richard alone, and I said I was very tired, and I wanted him to get rid of Gregory, but I didn't want Richard walking the streets in this condition. I objected to him going out in the street like this, but I wanted Richard to get rid of Gregory. Then Gregory said he had called a cab. Then he and Richard left.

On cross–examination, the following testimony was elicited:

Q Was Mr. Boyd drinking at your apartment?

A Yes, he was.

Q Was he being forced to drink?

A Well, I am not sure. I couldn't really talk to him. Mr.—

. . .

Q Did Mr. Bradshaw have a gun on Mr. Boyd and force him to drink?

A No. He didn't have a weapon that I could see.

Q Did he tell him that he would beat him if he didn't drink?

A Not in front of me, no.

The defendant himself claimed to be an alcoholic but his specific testimony about the drinking was extremely limited. After testifying that he had just been released from the hospital for a stab wound, he said:

A I went home, changed clothes and went to see my counselor. Then I went back home and took a nap, and then I went to a tavern around Union and Broadway, and in the tavern is where I met Mr. Bradshaw.

We stayed there and drank and talked, and then we went to my cousin's house. [Elaine Boyd.]

. . .

Q Did you consume any alcohol?
A Yes, we were drinking.
Q Who made the arrangements for you to leave?
A Well, Greg called the cab.

. . .

Q How intoxicated were you?
A I was high, but not where I couldn't walk or maneuver.

Then, on cross-examination:

Q . . . After you had a drink at Elaine Boyd's apartment, do you recall Mr. Bradshaw calling a cab?
A Yes, I do.

We believe that this is the entire testimony relating to drinking and its effect on the defendant. Most significantly, defendant did not verbalize about the specific effect of drinking on his mental process. He did not claim loss of memory and he did not claim inability to form a specific intent. Contrary to the assertion of defendant's brief and at the risk of engaging in a semantic disputation, defendant did not testify that he was "drunk," only that he had been drinking and that he was "high, but not to the point where I couldn't walk or maneuver."

Measured by the legal requirements of *State v. Zamora, supra, State v. Mriglot, supra,* and *State v. Thompson, supra,* the facts in the present case are such that we find no substantial evidence that defendant's drinking so affected his mental processes that a jury question of lack of capacity to form a specific intent is presented.

*State v. Conklin,* 79 Wn.2d 805, 489 P.2d 1130 (1971) is not inconsistent with the foregoing principles. It was there held to be error to exclude offered testimony as to defendant's condition as it related to his ability to form a specific intent. There is no discussion of the sufficiency of the evidence necessary to meet the threshold test discussed in *State v. Zamora, supra,* and subsequent cases. Clearly, the defendant was entitled to put in his proof in an effort to produce sufficient evidence to raise the issue.

In *State v. Dana,* 73 Wn.2d 533, 439 P.2d 403 (1968), it was not necessary to discuss the threshold test, because there was abundant evidence of consumption and, unlike the present case, defendant claimed to be totally without recollection of the event, thus supplying substantial evidence on the effect of the drugs on his mind sufficient to create a jury question on his capacity to form specific intent.

*State v. Shelton,* 71 Wn.2d 838, 431 P.2d 201 (1967) is likewise distinguishable because the defendant affirmatively testified both to the quantity of alcohol ingested and to its effect on him, stating that by reason of his drinking, he remembered nothing of the event or the events leading up to it.

*State v. Byers,* 136 Wash. 620, 241 P. 9 (1925) also demonstrates the existence of evidence both as to the quantity of alcohol consumed and its effect upon defendant's mental processes.

*State v. Utter,* 4 Wn. App. 137, 479 P.2d 946 (1971) contains evidence sufficient to satisfy the tests of *Zamora.* There was substantial evidence of drinking coupled with evidence that defendant was so affected that he had no memory of events from a time before the killing until some time after he was lodged in jail.

Here, defendant's own testimony actually demonstrates his capacity to form specific intent. He had a good memory for events preceding the taxi ride. He clearly was quite aware of what Bradshaw was attempting. He responded intelligently and affirmatively to Bradshaw's request for aid, and after the affair was over, he sufficiently sensed what had transpired to take affirmative action to flee. As the court noted in *Zamora,* such conduct tended to show that defendant knew what he was doing and appreciated the risks involved notwithstanding any possible alcohol he may have consumed.

Defendant presents one more argument in support of his position. He states that he had no personal intent to take

the victim's wallet. By so arguing, he seeks to divorce himself from Bradshaw's perceived intent to rob. Although the evidence is clear that defendant's act was the thing that overcame the victim's resistance and that he intended his act to have this effect, he suggests that his purpose was to keep Bradshaw from getting out of hand. (Presumably meaning the infliction of physical injury upon the victim.)

This amounts to an argument that, although he himself had no intent to commit a felony, he aided Bradshaw in accomplishing his felonious purpose so that the victim would not suffer a worse fate. The defendant cannot be permitted to so easily divorce his professed intent from Bradshaw's known intent. The jury was instructed on the law of aiding and abetting as it related to defendant's situation.[1] At the very least, the thing which defendant wished to bring about was to cause the victim to end the struggle by yielding his wallet so that he would not get hurt by Bradshaw. At this point, even if defendant did not originally intend robbery, his action in aiding Bradshaw, while aware of Bradshaw's intent, is sufficient to make him an accomplice. We cannot countenance his theory that because he did not personally share the specific intent to rob he was insulated by his private intent, which was merely to end the struggle. We do not perceive the law with respect to one who aids and abets to be so indulgent. As stated in 22 C.J.S. *Criminal Law* § 31(1) (1973):

> The motive with which an offense was committed is immaterial; the most laudable motive is no defense where the act committed is a crime in contemplation of law,
> . . .

---

[1] Instruction No. 8 reads:

"A person is guilty of a crime if it is committed by another person for which he is legally accountable. A person is legally accountable for the conduct of another person when he is an accomplice of such other person in the commission of a crime.

"A person is an accomplice of another person in the commission of a crime if, with knowledge that it will promote or facilitate the commission of a crime, he:

"(a) solicits, commands, encourages, or requests such other person to commit it; or

At best, the law provides a shield only for one whose acts may unwittingly aid another to accomplish his wrongful purpose. By defendant's own statement, he did not act unwittingly. His overt conduct amounts to more than mere assent or acquiescence. *Cf. State v. Linden,* 171 Wash. 92, 17 P.2d 635 (1932); *State v. Peasley,* 80 Wash. 99, 141 P. 316 (1914). Because under the standards of *State v. Zamora, supra,* the record lacks substantial evidence that defendant's drinking interfered with his ability to form specific intent, the refusal of the lesser included offense instruction was proper.

## HABITUAL CRIMINAL CONVICTION

Boyd objected to the use of a 1968 conviction for grand larceny on the basis that his guilty plea was entered without knowledge of the sentencing consequences. He contends that he was not advised that the maximum punishment which the court was required to impose was a term of 15 years. The trial court considered the attack upon the grand larceny conviction as being collateral, but in the exercise of caution held an evidentiary hearing to make a sufficient record.

A threshold question to a resolution of this issue must be whether the trial court properly permitted collateral attack of the 1968 conviction. A collateral attack is an attempt to impeach a judgment by matters dehors the record, in an action other than that in which it was rendered, and is an attempt to avoid, defeat, or evade it, or deny its force and effect, in some incidental proceeding not provided by law

---

"(b) aids or agrees to aid such other person in planning or committing it.

"But, before anyone can be convicted as an accomplice to another's crime, the state must prove beyond a reasonable doubt:

"(1) that the accused, at the time the crime was committed, shared a criminal intent with the person who actually committed the crime; and

"(2) that the accused knowingly associated himself with the venture, participated in it as something he wished to bring about and sought by his actions to make it succeed.

"Mere knowledge of a crime or concealment of that knowledge does not make a person an accomplice to the crime; nor does physical presence at the scene of a crime in itself make a person an accomplice."

for the express purpose of attacking the judgment. *Philbrick v. Parr,* 47 Wn.2d 505, 288 P.2d 246 (1955).

■ The recent case, *State v. Murdock,* 18 Wn. App. 294, 297, 567 P.2d 267 (1977), *review granted,* 90 Wn.2d 1007 (1978), held that collateral attack is permissible only when the judgment attacked is void for want of jurisdiction. The court there expressly rejected the argument accepted in *State v. Johnston,* 17 Wn. App. 486, 497, 564 P.2d 1159 (1977), that a constitutional infirmity in proceedings leading to a conviction deprives the trial court of jurisdiction. To suggest that a constitutional infirmity has the effect of depriving a court of *jurisdiction* proves too much and establishes a dangerous precedent. But we do feel that a constitutional defect renders a judgment void, and that judgments void for any reason should be subject to collateral attack.

In *State v. Bayles,* 121 Wash. 215, 219, 209 P. 20 (1922), the appellant contended that a statute purporting to empower an agency to make a determination was unconstitutional, that therefore any determination made by the agency on the basis of such unconstitutional statute was void, and that therefore such agency order should be subject to collateral attack. The court there held

> if such statute . . . is unconstitutional . . . for any . . . reason, any order so made by the department would . . . be void. A void order or judgment may be attacked at any time or place and in any proceeding by persons adversely affected. : . . . a void judgment may be attacked directly and collaterally.

The Supreme Court, then, viewed a judgment or order rendered on unconstitutional authority to be void, not merely voidable until its invalidity be declared. Given the importance of constitutional guaranties, especially in the context of criminal prosecutions, and the severity of the habitual criminal mandatory life sentence, we feel justice and sound policy dictate that judgments underlying such adjudication should be susceptible of collateral attack on constitutional grounds. We therefore decline to follow

either *Murdock* or *Johnston,* but hold that collateral attack should be allowed either when the court lacked jurisdiction, or when the judgment is void for some other reason.

In *Kercheval v. United States,* 274 U.S. 220, 71 L. Ed. 1009, 47 S. Ct. 582 (1927), the United States Supreme Court held that entry of a guilty plea must be voluntary, and that voluntariness requires advisement of the consequences. That constitutional requirement was upheld in *Woods v. Rhay,* 68 Wn.2d 601, 414 P.2d 601 (1966). A guilty plea entered without knowledge of the consequences is constitutionally involuntary and therefore void. *McCarthy v. United States,* 394 U.S. 459, 466, 22 L. Ed. 2d 418, 89 S. Ct. 1166 (1968); *Palmer v. Cranor,* 45 Wn.2d 278, 282, 273 P.2d 985 (1954).

In the present case Boyd's allegation and offer to prove that he had not been advised of the maximum prison term to which he might be sentenced as a result of his guilty plea raised a question as to the voluntariness of the plea. Having alleged such constitutional defect tending to avoid the judgment, he was therefore entitled collaterally to attack that judgment. We therefore conclude that collateral attack of the 1968 judgment was appropriate in this case.

■ Our next inquiry must be whether the trial court properly considered the totality of the circumstances or should have looked only to the record in making its determination regarding the voluntariness of the plea. It is currently the law that voluntariness of entry of a guilty plea must be reflected in the record and that no extrinsic evidence may be brought to light to demonstrate voluntariness. *In re Lundeen,* 20 Wn. App. 68, 578 P.2d 552 (1978); *Wood v. Morris,* 87 Wn.2d 501, 554 P.2d 1032 (1976); *Boykin v. Alabama,* 395 U.S. 238, 23 L. Ed. 2d 274, 89 S. Ct. 1709 (1969). While we support such a rule in the interest of encouraging the trial judge to make a complete record at the time the plea is taken, it cannot be applied in the present case. The United States Supreme Court in *Boykin v. Alabama, supra,* held that such rule should be applied prospectively only. Our Supreme Court held that

such rule should be applied only from the date of filing of its opinion in *Wood v. Morris, supra,* in September 1976. *Wood v. Morris, supra* at 515. Therefore the applicable test in determining the voluntariness of the plea was whether such voluntariness is manifest from the record made at the time of entry of the plea, and if the record is unclear, whether voluntariness is demonstrated by clear and convincing extrinsic evidence. *Wood v. Morris, supra* at 508. The trial court therefore properly admitted extrinsic evidence on the question of voluntariness.

At the conclusion of the evidentiary hearing the trial court ruled that beyond a reasonable doubt the entry of the guilty plea had been voluntary. The trial judge thus viewed the evidence of voluntariness as being more persuasive than necessary to satisfy the *Wood* test.

Unable to make any evaluation of credibility or weight, the appellate tribunal must consider only whether there was substantial evidence for the trial court's determination and view such evidence in the light most favorable to the State. *State v. Swanson,* 16 Wn. App. 179, 554 P.2d 364 (1976). We consider the testimony by Mr. Eikenberry, Boyd's counsel at the entry of the guilty plea, to constitute such substantial evidence which the trial court could accept or reject. We therefore affirm the trial court's ruling that the plea was voluntarily entered.

We have considered the other assignments of error, relating to admission of evidence and failure of the trial court to enter findings of fact. We find no error which would merit reversal or justify additional discussion.

The judgment and sentence are affirmed.

FARRIS, C.J., concurs.

RINGOLD, J. (dissenting)—My colleagues and I depart from our common road here, not by virtue of any disagreement with the law applicable, but in considering the appropriate role of an appellate court.

I would reverse. The defendant's contention that he was entitled to an instruction that simple assault was within the facts of this particular case, a lesser included offense within the robbery charge, is correct. Failure of the trial court to so instruct the jury was error.

Relying on *State v. Bresolin,* 13 Wn. App. 386, 534 P.2d 1394 (1975), Boyd argues (1) that the assault he admits is the same assault alleged by the State as the act constituting the infliction of force or fear necessary to convict of robbery, and that this assault was committed in an effort to protect Plith, and (2) the evidence of his intoxication and his testimony was sufficient so the jury could have found that he was guilty of a simple assault without intent. *See State v. Norby,* 20 Wn. App. 378, 579 P.2d 1358 (1978). Therefore, he concludes, the jury should have been instructed that simple assault is a lesser included offense within robbery, and the refusal by the trial court to so instruct constitutes error.

The latest pronouncement on the subject of lesser included offense is the case *State v. Bishop,* 90 Wn.2d 185, 580 P.2d 259 (1978), decided June 15, 1978. The court restated the rule from *State v. Roybal,* 82 Wn.2d 577, 583, 512 P.2d 718 (1973):

> A lesser included offense exists when all of the elements of the lesser offense are necessary elements of the greater offense. Put another way, if it is possible to commit the greater offense without having committed the lesser offense, the latter is not an included crime.

(Citation omitted.) The court then proceeded to hypothesize in the abstract a means, *viz.,* a consensual entry, by which burglary could be committed without trespass having been committed and thereupon concluded that trespass must not be considered a lesser included offense of burglary.

I am of the opinion that the *Bishop* analysis treating the question in the abstract, rather than in relation to the facts of the particular case, goes beyond the *Roybal* rule on which it relies. The rule must be applied in light of the

facts of the case, and whether one crime is a lesser included offense within a greater crime is a question which must be answered on a case–by–case basis.[2] In the present case, Boyd's putting the hotcomb to Plith's neck constituted simple assault, "an attempt, with unlawful force, to inflict bodily injury upon another, accompanied with the apparent present ability to give effect to the attempt if not prevented." *State v. Murphy,* 7 Wn. App. 505, 511, 500 P.2d 1276 (1972). This assault was necessarily proved by the State in establishing Boyd's "use or threatened use of immediate force", an element of robbery. RCW 9A.56.190. On the facts of this case all the elements of the lesser offense, simple assault, were necessary elements of the greater offense, robbery.

It is error for a trial court not to give a lesser included offense instruction where there is a genuine conflict in the evidence as to an element of the offense which element is not shared by the lesser included offense. *See Government of the Virgin Islands v. Carmona,* 422 F.2d 95 (3d Cir. 1970). Such conflict must be comprised of evidence which produces a rational basis for a verdict acquitting the defendant of the offense charged and convicting him of the lesser offense. Model Penal Code § 1.07(5) (Proposed Official Draft, 1962). The element of the greater offense not a part of the lesser offense is intent to rob.

The evidence of Boyd's intoxication, in addition to the testimony that he had no intent to rob, provides a sufficient evidentiary basis for a jury to consider whether or not a

---

[2]Were we to follow *State v. Bishop,* 90 Wn.2d 185, 580 P.2d 259 (1978), the analysis would be in the abstract as follows: Robbery is comprised of the "use or threatened use of immediate force, violence or fear of injury to that person [the victim] *or his property.*" RCW 9A.56.190. Hence, the force may be directed against the victim's *property* rather than against his *person* and the defendant still be found guilty of robbery. Assault, however, requires that the attempted injury be directed against the *person. State v. Murphy,* 7 Wn. App. 505, 500 P.2d 1276 (1972). Thus, because robbery is possible of commission without an assault necessarily having been committed, assault is not a lesser included offense within robbery. We do not believe this is the result intended by the *Bishop* court. (Italics mine.)

reasonable doubt existed as to the defendant's intent. It must be recalled that substantial evidence to create a "reasonable" doubt must of necessity be of lesser quantity and quality than the evidence necessary for the State to propound in order to convict.

At least two instructions given by the trial court provided a basis for the jury to find a reasonable doubt that the defendant lacked intent. First was the instruction with respect to voluntary intoxication. No matter how slim that testimony may have been, the jury would be entitled to believe it and find a reasonable doubt. In the second instance, the trial court also gave an instruction dealing with an accomplice and provided as follows:

A person is an accomplice of another person in the commission of a crime if, with knowledge that it will promote or facilitate the commission of the crime, he:
  (a) solicits, commands, encourages, or requests such other person to commit it; or
  (b) aids or agrees to aid such other person in planning or committing it.

But, before anyone can be convicted as an accomplice to another's crime, the state must prove beyond a reasonable doubt:
(1) *that the accused, at the time the crime was committed, shared a criminal intent with the person who actually committed the crime; and*
(2) that the accused knowingly associated himself with the venture, participated in it as something he wished to bring about and sought by his actions to make it succeed

The trial court instructed the jury as to the implications of intoxication and the requirement for one to be an accomplice. The majority is second–guessing the trial court and holding as a matter of law that the voluntary intoxication instruction and the emphasized portion of the accomplice instruction should not have been given. No appeal has been taken from either instruction and both instructions therefore become the law of the case.

It is not the function of an appellate court to scrutinize

the testimony to determine whether or not sufficient evidence was produced for the jury to consider to warrant the granting or the denial of a particular jury instruction to which no error has been assigned by either the State or the defendant. We must assume that substantial evidence was presented in order to justify the trial court to submit the instructions to the jury. This the trial court has done. Our view of the credibility of the defendant's assertions as to lack of intent, or the credibility of the witnesses whom he has presented that he lacked intent must be considered by the jury.

I would reverse for failure to submit the lesser included offense instruction.

Reconsideration denied November 16, 1978.

Review granted by Supreme Court July 27, 1979.