# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

STATE OF WASHINGTON,

Appellant,

v.

THEODORE JOSEPH OHMS,

Respondent.

DIVISION ONE

No. 82934-3-I

UNPUBLISHED OPINION

DWYER, J. — The State appeals from the sentence imposed on Theodore Ohms after a resentencing hearing. The State contends that the superior court erred by declining to add one point to the offender scores related to several convictions as a result of Ohms committing his current offenses while on community custody. Because the sentence condition of community custody was imposed on Ohms pursuant to a constitutionally invalid conviction, we disagree. Accordingly, we affirm the ruling of the superior court.

I

Theodore Ohms pleaded guilty to one count of assault in the first degree with a firearm (count I), one count of unlawful possession of a firearm in the second degree (count II), one count of attempting to elude a pursuing police vehicle (count III), and one count of vehicular assault (count IV). In his guilty plea, Ohms acknowledged that he committed each of these offenses while on community custody.

On February 10, 2011, the superior court entered judgment and sentenced Ohms to 238 months of incarceration on counts I through IV.[1] Ohms had a criminal history of two prior felony convictions, which included one prior conviction for possession of a controlled substance. Ohms's offender score was 7 with regard to counts I and III, and 6 with regard to counts II and IV.[2] For each of these counts, one point resulted from Ohms's prior conviction for possession of a controlled substance, while another point resulted from Ohms committing his present offenses while he was on community custody. Notably, the term of community custody was imposed pursuant to his prior sentence for possession of a controlled substance.

The parties agree that, following our Supreme Court's decision in State v. Blake, 197 Wn.2d 170, 195, 481 P.3d 521 (2021), Ohms filed a motion in superior court in which he sought relief from the judgment and sentence.[3] On June 30, 2021, Ohms's attorney filed a memorandum wherein he argued that Ohms's offender score on count I should be 5 instead of 7.[4] On July 1, the State filed a memorandum in which the State agreed that Ohms's prior conviction for possession of a controlled substance should not be included in his offender

---

[1] This sentence of 238 months of incarceration included 60 months of incarceration for a firearm enhancement that applied to count I.

[2] The standard range sentence for each of the counts was as follows: (1) the standard range sentence for count I was 178 months to 236 months of incarceration, (2) the standard range sentence for count II was 22 months to 29 months of incarceration, (3) the standard range sentence for count III was 14 months to 18 months of incarceration, and (4) the standard range sentence for count IV was 33 months to 43 months of incarceration.

[3] This motion is not contained within the record on appeal.

[4] In this memorandum, Ohms's attorney explained that Ohms had already completed the sentences imposed pursuant to the other three counts.

score. However, the State argued that Ohms's offender score should be 6 because Ohms committed his current offense while on community custody.

On July 13, 2021, the superior court heard argument as to the proper calculation of Ohms's offender score. During the hearing, the superior court stated that "you cannot use the community custody status to enhance the sentence." The superior court reasoned, in part, that "the Supreme Court, in the Blake decision, was very careful to make very clear the void and retroactive status of their decision." That same day, the superior court resentenced Ohms with an offender score of 5 for counts I and III, and an offender score of 4 on counts II and IV. This resulted in a standard range sentence of 138 to 184 months of incarceration for count I.[5] The superior court sentenced Ohms to 198 months of incarceration on count 1.[6]

The State appeals.

II

The sole issue on appeal is whether the sentencing court erred by declining to add one point to the offender score as a result of Ohms committing the current offenses while on community custody. The condition of community custody was imposed on Ohms pursuant to his sentence for violating RCW 69.50.4013(1)—a statute that, pursuant to Blake, has always been void under both the state and federal constitutions. We hold that the superior court, when

---

[5] In addition, the superior court (1) reduced the sentence for count II to 16 months of incarceration, (2) reduced the sentence for count III to 12 months of incarceration, and (3) reduced the sentence for count IV to 20 months of incarceration.

[6] This sentence on count I included 60 months of incarceration for the firearm enhancement that applied to count I.

calculating Ohms's offender score, properly declined to consider that Ohms committed the current offenses while he was on community custody as a direct consequence of an invalid conviction.

A

The Sentencing Reform Act of 1981 (the SRA) provides, in pertinent part, "[i]f the present conviction is for an offense committed while the offender was under community custody, add one point." RCW 9.94A.525(19). Ohms committed the current offenses while he was serving a sentence that imposed a term of community custody. Ohms was serving this term of community custody pursuant to a prior conviction for possession of a controlled substance in violation of RCW 69.50.4013(1).

B

In Blake, our Supreme Court held that Washington's strict liability drug possession statute, RCW 69.50.4013(1), "violates the due process clauses of the state and federal constitutions and is void." 197 Wn.2d at 195. In so doing, the Blake court explained:

> This case presents an issue of first impression for this court: Does this strict liability drug possession statute with these substantial penalties for such innocent, passive conduct exceed the legislature's police power? The due process clauses of the state and federal constitutions, along with controlling decisions of this court and the United States Supreme Court, compel us to conclude that the answer is yes—this exceeds the State's police power.

197 Wn.2d at 173 (footnote omitted).

It is well established that a prior conviction based on a constitutionally invalid statute may not be considered when a sentencing court calculates an

offender score. State v. Ammons, 105 Wn.2d 175, 187-88, 713 P.2d 719, 718 P.2d 796 (1986); accord State v. Jennings, 199 Wn.2d 53, 67, 502 P.3d 1255 (2022) (holding that, pursuant to Blake, a sentencing court may not consider a prior conviction under RCW 69.50.4013(1) when calculating an offender score).

Furthermore,

"'[a]n unconstitutional law is void, and is as no law'"; accordingly, *a penalty imposed pursuant to an unconstitutional law is void* even if the prisoner's sentence became final before the law was held unconstitutional. Montgomery v. Louisiana, 577 U.S. 190, 204, 136 S. Ct. 718, 193 L. Ed. 2d 599 (2016) (quoting Ex parte Siebold, 100 U.S. 371, 376, 25 L. Ed. 717 (1879)).

State v. Markovich, 19 Wn. App. 2d 157, 172, 492 P.3d 206 (2021) (emphasis added), review denied, 198 Wn.2d 1036 (2022).

Under the SRA, a term of community custody amounts to a penalty that may or must be imposed by a sentencing court. Indeed, "[c]ommunity placement[7] primarily furthers the *punitive* purposes of deterrence and protection." State v. Ross, 129 Wn.2d 279, 286, 916 P.2d 405 (1996) (emphasis added). Additionally, the statutory definition of community custody clarifies that a term of community custody amounts to a portion or part of the sentence imposed upon an offender:

"Community custody" means that *portion of an offender's sentence of confinement* in lieu of earned release time or imposed as *part of a sentence* under this chapter and served in the community subject to controls placed on the offender's movement and activities by the department.

---

[7] "[C]ommunity custody is a subset of community placement." State v. Crandall, 117 Wn. App. 448, 451, 71 P.3d 701 (2003).

5

RCW 9.94A.030(5) (emphasis added). Being sentenced to a period of community custody is a direct consequence of a conviction. Ross, 129 Wn.2d at 285-86.

There are at least two reasons why the superior court did not err by declining to add one point to Ohms's offender scores as a result of his commission of the current offenses while on community custody. First, the term of community custody that was imposed on Ohms pursuant to his prior conviction for violating RCW 69.50.4013(1) was a penalty imposed pursuant to an unconstitutional law. Therefore, that term of community custody was void. See Markovich, 19 Wn. App. 2d at 172. Because the term of community custody was void, the superior court properly declined to consider whether Ohms committed an offense while on community custody.

Second, in Blake, our Supreme Court explained that, as "an issue of first impression," RCW 69.50.4013(1), "violates the due process clauses of the state and federal constitutions and is void." 197 Wn.2d at 173, 195. As such, Blake announced that courts were *never* with lawful authority to enter judgment on a conviction for unlawful possession of a controlled substance in violation of RCW 69.50.4013(1). Moreover, because courts were never with lawful authority to enter judgment on a conviction for unlawful possession of a controlled substance, they were also never with lawful authority to impose a *sentence* pursuant to such a conviction. Had the superior court, under these circumstances, added a point to Ohms's offender scores for committing the current offenses while on community custody, the court would have "renewed" the original constitutional

violation.  State v. Holsworth, 93 Wn.2d 148, 157, 607 P.2d 845 (1980).

Accordingly, the superior court did not err.

Nevertheless, the State contends that, pursuant to the plain language of the SRA,[8] the superior court was required to add one point to Ohms's offender scores regardless of whether the term of community custody in question was imposed pursuant to a violation of an unconstitutional statute.  This is so, according to the State, because neither RCW 9.94A.525(19) nor RCW 9.94A.030(5) expressly provides that a term of community custody must be imposed pursuant to a constitutionally valid conviction.  The State's argument runs counter to prevailing authority.

Indeed, the SRA itself does not explicitly require a prior conviction to be constitutionally valid in order for a sentencing court to consider such a conviction when calculating an offender score.  See RCW 9.94A.525.  Nevertheless, it is established beyond debate that a prior conviction based on a constitutionally invalid statute may not be considered in computing an offender score.  Ammons, 105 Wn.2d at 187-88.  Just as we interpret the SRA to require that a prior conviction be valid in order for the conviction to be considered by a sentencing court, we likewise interpret the SRA to require that a term of community custody be validly imposed in order for such a condition to be considered by a sentencing court under RCW 9.94A.525(19).

Undeterred, the State next asserts that we should treat the community custody sentencing condition that is enumerated in RCW 9.94A.525(19) in the

---

[8] "Statutory interpretation is a question of law, which we review de novo."  State v. Budik, 173 Wn.2d 727, 733, 272 P.3d 816 (2012).

7

same manner that we treat violations of erroneously entered contempt orders.
The State cites to an opinion wherein the United States Supreme Court
explained that, in order to be entitled to relief from a court order, a party must
directly challenge the validity of that order or the order that serves as the basis
for that order:

> An injunction duly issuing out of a court of general jurisdiction with
> equity powers upon pleadings properly invoking its action, and
> served upon persons made parties therein and within the
> jurisdiction, must be obeyed by them however erroneous the action
> of the court may be, even if the error be in the assumption of the
> validity of a seeming but void law going to the merits of the case. It
> is for the court of first instance to determine the question of the
> validity of the law, and until its decision is reversed for error by
> orderly review, either by itself or by a higher court, its orders based
> on its decision are to be respected, and disobedience of them is
> contempt of its lawful authority, to be punished.

Howat v. State of Kansas, 258 U.S. 181, 189-90, 42 S. Ct. 277, 66 L. Ed. 550
(1922).

Additionally, the State cites to a decision from our Supreme Court wherein
the court stated that "[t]he traditional measure of the vitality of a contempt
conviction for violation of a court order when the order itself is found to have
been improper is the scope of the jurisdiction of the issuing court." Mead Sch.
Dist. No. 354 v. Mead Ed. Ass'n, 85 Wn.2d 278, 280, 534 P.2d 561 (1975).

Yet the issue herein involves the conditions that a court must consider
when sentencing a defendant in an entirely different cause and for a subsequent
offense. In this cause, Ohms does not directly challenge the sentence imposed
on him pursuant to his prior violation of RCW 69.50.4013(1). Instead, Ohms
initiated this proceeding by filing a motion wherein he sought to have the offender

scores recalculated for the purpose of correctly calculating the standard range sentence applicable to his subsequent convictions. Put simply, this case is not that case. The State's argument fails.

The State also draws an analogy between the issue herein and the crime of escape. RCW 9A.76.110(1) provides that "[a] person is guilty of escape in the first degree if he or she knowingly escapes from custody or a detention facility while being detained pursuant to a conviction of a felony or an equivalent juvenile offense." Our Supreme Court has explained that "in a prosecution for escape the State is not required to prove the defendant had been detained pursuant to a constitutionally valid conviction." State v. Gonzales, 103 Wn.2d 564, 565, 693 P.2d 119 (1985). In Gonzales, the question presented dealt with the elements of the crime.

Notably, the Gonzales court expressly distinguished its holding therein from its earlier holding in Holsworth, wherein the court held that the "habitual criminal statute requires proof of constitutionally valid prior convictions."[9] 103 Wn.2d at 567. In so doing, the Gonzales court explained that "Holsworth involves sentence enhancement based on prior convictions" and was therefore "not analogous to the situation before us." 103 Wn.2d at 567. Similar to the

---

[9] In particular, the Holsworth court stated:
We . . . hold that the defendant in a habitual criminal proceeding can challenge the use of pre-Boykin [v. Alabama, 395 U.S. 238, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969)] pleas on the ground that he or she was not apprised of the nature of or of the consequences of pleading guilty to the prior offense. Because we do not consider this application of Boykin principles to be either retroactive or a collateral attack we do not reach or assess the validity of the Court of Appeals holding in State v. Boyd, 21 Wn. App. 465, 586 P.2d 878 (1978), that attack, although collateral, would be allowed because the plea defect was of a constitutional nature.
93 Wn.2d at 159.

issue in <u>Holsworth</u>, the issue herein involves a sentencing court's exercise of its authority during a sentencing proceeding. As a result, it is materially distinguishable from the issue presented in <u>Gonzales</u>.

The superior court did not err.[10]

Affirmed.

WE CONCUR:

---

[10] In addition to the analysis set forth herein, we adopt the analysis in this court's published opinion in <u>State v. French</u>, No. 82930-1-I.