698 So.2d 597 (1997)
Victor BRANCACCIO, Appellant,
v.
STATE of Florida, Appellee.
No. 95-4135.
District Court of Appeal of Florida, Fourth District.
August 6, 1997.
Certification Denied September 15, 1997.
*598 Roy Black and Christine M. Ng of Black, Srebnick & Kornspan, P.A., Miami, for appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Sharon A. Wood and Joseph A. Tringali, Assistant Attorney Generals, West Palm Beach, for appellee.
KLEIN, Judge.
Appellant was found guilty of first degree murder and kidnapping and sentenced to life in prison. He had admitted the killing, and the only issue for the jury to determine was whether he had the mental capacity to form the intent necessary to commit the crimes. We must reverse for a new trial because the court erred in refusing to instruct the jury on appellant's primary defense, which was that he was involuntarily intoxicated as a result of the medication he was taking pursuant to a prescription.
Appellant, who was 16, gave a statement to the police explaining that he had had a fight with his mother over what they were having for dinner and went for a walk to cool down. He encountered a stranger who asked him to stop cursing and called him low class. He punched her repeatedly, led her to a vacant lot, and continued to punch her and kick her. When a car came along he became frightened and ran home.
He returned to the scene the next morning to ask the woman if she needed help, but she did not respond. The medical examiner testified that the woman had suffered at least four severe and potentially fatal blows to her head, as well as massive trauma to her chest, and that she would not have been alive at that point. Appellant then went shopping for car parts, but returned later in the day with newspaper and unsuccessfully attempted to set her body on fire. He then left and returned with spray paint, painting her body red in order to cover up his fingerprints.
Appellant's defense was that the medication he was taking, which was prescribed to him during his recent confinement in a mental hospital, had caused him to lose control. Two months prior to the killing, appellant had been committed to a mental health center pursuant to the Baker Act, § 394.451, Florida Statutes (1995), after threatening to kill his parents and himself. His parents then moved him to the Savannas Mental Hospital for treatment, where appellant was placed on Zoloft, a drug used to treat depression. The hospital also diagnosed appellant as suffering from alcohol abuse, attention deficit disorder, and oppositional defiant disorder.[1] The hospital noted a change in appellant's personality after he was placed on Zoloft, in that appellant became more irritable, loud, had increased energy and was given to angry outbursts. Appellant had apparently attempted suicide while at the hospital by holding his breath.
A psychiatrist testifying for the defense, Dr. Wade Myers, testified that Zoloft may have had a reaction which was opposite to what it was supposed to have had in appellant, causing hypomania.[2] The medical warnings for the drug state that the following side effects are infrequent but possible: "aggressive reactions, amnesia, anxiety, delusions, depersonalization, depression, aggravated depression, emotional instability, ... *599 hallucinations, neurosis, paranoid reaction, suicidation and suicide attempts." "Infrequent" is medically defined as occurring between 1 in 100 and 1 in 1000 patients.
Dr. Myers examined appellant after his arrest and concluded that he suffered from major depression, possible bipolar disorder, alcohol abuse, a learning disability, and a probable brain injury. Appellant had been born prematurely and spent seven days in intensive care for oxygen deprivation. Also, at the age of two, he had nearly drowned and had to be resuscitated. His IQ is just above retarded.
Dr. Myers concluded that appellant did not have the ability to form the intent to commit first degree murder based on his mental deficiencies and his involuntary intoxication by the Zoloft.
Another expert who testified for the defense, Dr. Peter R. Breggin, testified that in his opinion, Zoloft could have had amphetamine like effects, and could have "pushed him over." Under the Freedom of Information Act, Dr. Breggin was able to obtain information reported by doctors and pharmacists regarding reactions to the drug. Dr. Breggin found 22 reports tying the drug to hostile reactions, 57 reports linking the drug to an aggravation reaction, 55 suicide attempts, and 64 reports linking the drug to increased agitation. These reports suggest that the drug can cause a loss of impulse control. He opined that the hospital records from the mental hospital where appellant was confined indicate that he was experiencing a similar reaction to the drug. Dr. Breggin diagnosed Brancaccio with substance induced mood disorder brought on by Zoloft.
The State rebutted appellant's experts with experts of its own, who testified that appellant was capable of forming the intent to commit murder and kidnapping. They did agree that he suffered from major depression, but were of the opinion that he was not involuntarily intoxicated because of the Zoloft.
The jury found appellant guilty of first degree murder (felony murder), and kidnapping. His primary argument on appeal is that the trial court erred in refusing to instruct the jury on his theory of defense, involuntary intoxication.
The defense of involuntary intoxication has been explained in an article which collects cases from various states which permit it as follows:
Generally speaking, an accused may be completely relieved of criminal responsibility if, because of involuntary intoxication, he was temporarily rendered legally insane at the time he committed the offense. And again speaking generally, the courts have considered one to be involuntarily intoxicated when he has become intoxicated through the fault of another, by accident, inadvertence, or mistake on his own part, or because of a physiological or psychological condition beyond his control.
The practice of relieving one of criminal responsibility for offenses committed while in a state of involuntary intoxication extends back to the earliest days of the common law. Involuntary intoxication, it appears, was first recognized as that caused by the unskillfulness of a physician or by the contrivance of one's enemies. Today, where the intoxication is induced through the fault of another and without any fault on the part of the accused, it is generally treated as involuntary. Intoxication caused by the force, duress, fraud, or contrivance of another, for whatever purpose, without any fault on the part of the accused, is uniformly recognized as involuntary intoxication. This is often stated in an exclusive form, that is, that the intoxication is involuntary only if induced by the fraud, etc., of another. Although this implies that intoxication from any other cause is not involuntary, the courts making such a statement do, in fact recognize that intoxication caused in other ways can be involuntary.
* * * * * *
Because a patient is entitled to assume that an intoxicating dose would not be prescribed or administered by a physician, where intoxication results from medicine which has been prescribed (and taken as prescribed) or administered by a physician, such intoxication is generally considered involuntary. *600 Phillip E. Hassman, Annotation, When Intoxication Deemed Involuntary so as to Constitute a Defense to Criminal Charge, 73 A.L.R.3d 195 (1976) (footnotes omitted).
This court recognized the defense of involuntary intoxication in the case of Boswell v. State, 610 So.2d 670 (Fla. 4th DCA 1992). In a case with similar facts to our own, Boswell was charged with shooting a police officer. He defended on the theory that he became very inebriated as a reaction to taking the prescribed medications Xanax and Prozac.[3] Boswell had cirrhosis of the liver which led to a toxic level of Prozac building up in his body. Experts testified that the anti-depressants can cause side effects such as paranoid reactions and hallucinations and that Boswell was suffering from hallucinations when he "heard a shot." Boswell, 610 So.2d at 672. This court held that the trial court erred in failing to give the involuntary intoxication instruction, reiterating that "[a] party is entitled to have the jury instructed upon the law which is applicable to his theory of the case, if there is any competent evidence adduced that could support a verdict in his favor." Boswell, 610 So.2d at 673.
The State, apparently recognizing the validity of the defense argues that the instruction should not have been given here, only because there was no evidence to support it. The state first argues that the evidence did not show that appellant was taking Zoloft at the time of the murder. In his taped statement to the police, which was taken three days after the killing, appellant was asked whether he was on any medication and replied that he was taking Zoloft. Appellant had also told one of his medical experts that he thought that he had taken his medicine on the day of the killing. In addition, a friend of appellant had testified that on the day of the killing he had observed appellant's mother make him go into the house in order to take his medication.
The only other argument advanced by the State is that there was no evidence that Zoloft had an adverse reaction on appellant; however, that argument ignores the expert testimony, the mental hospital records, and testimony of people who knew the appellant and observed a personality change in him. We therefore reject the state's arguments that the instruction should not have been given under these facts.
We were recently compelled to reverse another murder conviction for a new trial, because of the court's failure to give a specific instruction on insanity induced by the long and continued use of intoxicants, in Brunner v. State, 683 So.2d 1129 (Fla. 4th DCA 1996). In that case, defendant had a severe thyroid disorder known as Graves disease, which causes emotional problems, and defendant had used alcohol and drugs excessively over a long period of time to cope with the psychological problems associated with the disease. In reversing, we noted that the fact that insanity can be caused by the use of intoxicants over a long period of time is "not something which would necessarily be understood by jurors who have only been read the standard instruction on insanity." Id. at 1131. Similarly, in the present case, the jurors would not necessarily have known, after having been given the standard instructions, that involuntary intoxication by medication would be a defense.
The defense submitted several different forms of jury instructions on involuntary intoxication, and there was extensive discussion on whether the instruction should be given; however, the court concluded that the standard instruction on insanity was sufficient, and rejected the involuntary intoxication instructions.[4] It is unfortunate that the State *601 did not recognize that involuntary intoxication is a defense in the trial court, as it now recognizes on appeal, because if it had agreed that the instruction should be given, we would not have to reverse this otherwise well-tried case for a new trial.
WARNER and SHAHOOD, JJ., concur.
NOTES
[1] The condition of Oppositional Defiant Disorder is defined in the Diagnostic and Statistical Manual of Mental Disorders (Third Ed.Rev. 1987, p. 56) as follows:

The essential feature of this disorder is a pattern of negativistic, hostile, and defiant behavior without the more serious violations of the basic rights of others that are seen in Conduct Disorder. The diagnosis is made only if the oppositional and defiant behavior is much more common than that seen in other people of the same mental age.
Children with this disorder commonly are argumentative with adults, frequently loose their temper, swear, and are often angry, resentful, and easily annoyed by others. They frequently actively defy adult requests or rules and deliberately annoy other people. They tend to blame others for their own mistakes or difficulties.
[2] Dr. Myers explained that hypomania, as a side effect of Zoloft, produced an amphetamine like effect which manifested itself in the appellant by causing him to have trouble concentrating, difficulty sitting still, an increased energy level, irritability, and anxiety.
[3] One of the defense experts testified that Zoloft works in a manner almost identical to the manner in which Prozac works.
[4] Florida does not have a standard jury instruction on involuntary intoxication. Other states, such as Missouri, do, and if the following paraphrased portion from Missouri's Standard Criminal Instruction 310.52 were read as part of Florida's standard instruction on insanity, it would sufficiently explain appellant's defense:

An intoxicated condition is involuntarily produced when it is brought about by the introduction into his body of any substance which he does not know and has no reason to know has a tendency to cause an intoxicated or drugged condition.
The second sentence of Florida's insanity instruction 3.04(b) would also have to be amended to read: "A person is considered to be insane when: 1) He had a mental infirmity, disease, defect or was involuntarily intoxicated."