805 So.2d 885 (2001)
John Robert MILLER, Appellant,
v.
STATE of Florida, Appellee.
No. 2D00-1163.
District Court of Appeal of Florida, Second District.
October 12, 2001.
*886 James Marion Moorman, Public Defender, Bartow, and Jack W. Shaw, Jr., Special Assistant Public Defender, Bartow, for Appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Timothy A. Freeland, Assistant Attorney General, Tampa, for Appellee.
DAVIS, Judge.
John Robert Miller challenges his convictions for burglary with a firearm, shooting into a building, and discharging a firearm in public. He argues that the trial court improperly denied his motions for judgment of acquittal, improperly excluded certain testimony, and erroneously instructed the jury on the intoxication defense. Although we affirm the trial court on the first two issues without discussion, we agree that the trial court improperly instructed the jury. Accordingly, we reverse Miller's convictions for armed burglary and shooting into a building.[1]
An admitted heroin user, Miller went to the Parental Awareness and Responsibility (PAR) clinic seeking treatment for his addiction and enrolled in a methadone program. After a number of months, Miller decided he wanted to be free of all drugs, including methadone. He attempted to get off the methadone through the PAR clinic but was unsuccessful. He then turned to Neuraad, a clinic that offered a different type of treatment called opiate detoxification. Under this program, intense doses of numerous toxic drugs are introduced into the patient's system, following which the patient is sedated with anesthesia. The patient then sleeps during the period that his or her body undergoes the physical manifestations of withdrawal, thus greatly reducing the patient's conscious awareness of the most acute symptoms of withdrawal.
Miller checked into the Neuraad clinic on a Tuesday morning. The staff administered the medications and the anesthesia. Some twenty-seven hours later he was released, still under the influence of significant amounts of medication and with prescriptions for additional medication. Within three hours of his release, Miller went to the PAR clinic. When he arrived, the clinic was closed for the day. Upset that he could not get in, Miller shot the lock off of the gate. He walked around the building, shooting into it several times. He then broke a window and climbed inside. He ultimately surrendered to the police when they entered. Miller was charged with shooting into a building, burglary with a firearm, and aggravated assault.
At trial, Miller raised the defenses of insanity and intoxication. He argued that because of the drugs that Neuraad had given him, he did not have the capacity to distinguish between right and wrong and, thus, was legally insane when he arrived at the PAR clinic. In the alternative, he argued that due to the drugs, he did not have the ability to form the specific intent to commit the offenses of armed burglary and shooting into a building. The trial court properly found that the evidence supported instructing the jury on both defenses.
Miller's trial counsel requested, and the trial court gave, both the standard instruction on insanity and the standard instruction *887 on voluntary intoxication.[2] However, Miller's counsel also presented the court with two proposed instructions on involuntary intoxication. Although one of the proposed instructions was an accurate statement of law, the trial court accepted neither and chose instead to give the jury an instruction of its own design, which failed to adequately instruct the jury.[3] Accordingly, we must reverse. See Brunner v. State, 683 So.2d 1129 (Fla. 4th DCA 1996).
At the outset, we observe that there is a crucial distinction between the defense of insanity and that of intoxication. A successful insanity defense results in the defendant's acquittal of all charges on the theory that one cannot be held criminally responsible for acts that he or she did not know were wrong. Gray v. State, 731 So.2d 816 (Fla. 5th DCA 1999). By contrast, a successful intoxication defense results in an acquittal of specific intent crimes only, not general intent crimes. Linehan v. State, 476 So.2d 1262 (Fla. 1985). The rationale is that although an intoxicated defendant may know the difference between right and wrong, he or she may not be able to form the specific intent required to commit certain offenses.
The issue here is whether the intoxication defense applies where the intoxication is involuntary, but does not rise to the level of legal insanity. When intoxication is voluntary, it is considered to be a defense to specific intent crimes. However, where the intoxication is involuntary, it typically has been raised in an attempt to prove an insanity defense rather than an intoxication defense. The definition of insanity has been expanded to include those situations in which a person could not distinguish right from wrong as the result of an involuntarily-induced intoxicated state. Brancaccio v. State, 698 So.2d 597 (Fla. 4th DCA 1997).
At trial, the State argued that involuntary intoxication that did not rise to the level of legal insanity was not a defense, and an instruction that allowed the jury to acquit the defendant of specific intent crimes as the result of involuntary intoxication was an inaccurate statement of the law. In support of its position, the State cited Brancaccio where the Fourth District reversed the trial court for its failure to instruct the jury that involuntary intoxication could be a basis for finding insanity. In a footnote, the court indicated that the insanity instruction should have been amended to provide that a person could be found to be insane as the result of involuntary intoxication. Although Brancaccio enlarged the existing definition of insanity to include involuntary intoxication, it did not say, nor should it be read to say, that proving insanity was the exclusive way to apply the defense of involuntary intoxication or that the standard intoxication defense to a specific intent crime was unavailable if the intoxicants were consumed involuntarily.
Indeed, common sense dictates against such a conclusion. If one who willingly and purposely consumes intoxicants to the point that he is unable to form a specific intent is to be excused from guilt of a specific intent crime, why should one who has unknowingly consumed the intoxicant be denied the same relief? See State v. Mriglot, 88 Wash.2d 573, 564 P.2d 784 *888 (1977). As the Supreme Court of Washington stated in Mriglot, "If a defendant is so intoxicated (voluntarily or involuntarily) as to be unable to form the requisite intent, he cannot be guilty of a specific intent crime. He need not prove temporary insanity simply because the intoxication happened to be involuntary." 564 P.2d at 576. The State is required to prove the defendant's state of mind. Yohn v. State, 476 So.2d 123, 126 (Fla.1985). Therefore, if the defendant could not form the required state of mind due to intoxication, it should be irrelevant whether the intoxication was voluntary or involuntary.
In this case, it is clear that the jury rejected the insanity defense and concluded that Miller knew the difference between right and wrong. However, it is not clear what the jury concluded in regard to the intoxication defense. As instructed, if the jury concluded that Miller was involuntarily intoxicated, it could not consider the intoxication defense at all; it was limited to the insanity defense. That is, it is not clear whether the jury found Miller had the requisite intent or, instead, found he lacked the requisite intent but also found his intoxication was involuntary, and, under the erroneous instruction, the intoxication defense did not apply.
Because the instruction was misleading and misinformed the jury as to the applicable law, we reverse Miller's convictions on the specific intent crimes and remand for a new trial on the charges of burglary with a firearm and shooting into a building.
Reversed and remanded.
NORTHCUTT, A.C.J., and CASANUEVA, J., Concur.
NOTES
[1] Since discharging a firearm in public is a general intent crime, the erroneous instruction did not impact that verdict.
[2] These offenses occurred prior to the adoption of section 775.051, Florida Statutes (1999), which abolished the defense of voluntary intoxication.
[3] While the instruction was an accurate statement of the law on insanity due to involuntary intoxication and was appropriate for the facts of this case, it did not completely explicate the law as it pertains to involuntary intoxication.