941 So.2d 1178 (2006)
Patrick SLUYTER, Appellant,
v.
STATE of Florida, Appellee.
No. 2D05-1501.
District Court of Appeal of Florida, Second District.
October 20, 2006.
Rehearing Denied November 20, 2006.
*1179 James Marion Moorman, Public Defender, and John C. Fisher, Assistant Public Defender, Bartow, for Appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Elba Caridad Martin and John M. Klawikofsky, Assistant Attorneys General, Tampa, for Appellee.
DAVIS, Judge.
Patrick Sluyter appeals his judgment and sentence for two counts of sexual battery. Because the trial court improperly prevented Sluyter from presenting an insanity defense, we reverse and remand for a new trial.
Sluyter was charged by information with two counts of sexual battery on a child less than twelve years of age. After examination by court-appointed experts, Sluyter filed his notice of intent to rely on an insanity defense based on a steroid psychosis. In response, the State filed a motion in limine, seeking to exclude the doctors' testimony related to such a defense. The trial court granted the State's motion. Following a jury trial at which he was convicted of both charges, Sluyter was sentenced to two life sentences.
*1180 The insanity test in Florida is the modified version of the M'Naghten rule.
In Florida, the test for insanity as a defense to a criminal charge is whether at the time of the offense the defendant had a mental infirmity, disease, or defect and, as a result, did not know what he was doing or did not know what he was doing was wrong.
Fisher v. State, 506 So.2d 1052, 1054 (Fla. 2d DCA 1987) (citation omitted). The burden is on the defendant to present evidence that shows his insanity. Milburn v. State, 742 So.2d 362, 363 (Fla. 2d DCA 1999); Johnson v. State, 408 So.2d 813, 815 (Fla. 3d DCA 1982).
Sluyter presented evidence that, due to diminished sexual libido, he had been prescribed Halotestin by his treating physician. Sluyter also proffered the testimony of Dr. Frederick Schaerf, a practicing psychiatrist who was appointed by the court to examine Sluyter. Dr. Schaerf testified that, in his opinion, Sluyter met the test for insanity:
Well, I strongly believe that he meets the Florida definition of insanity. That, No. 1, he is suffering from a mental infirmity or defect or disease, and that is the Halotestin intoxication.
. . . And so I also believe because of that Halotestin intoxication, he did not know what he was doing at that moment because it was such a driven sexual behavior. And although afterwards he'll say that it was wrong, at that specific moment he could not tell right from wrong.
However, despite this specific testimony, the trial court denied Sluyter the opportunity to present an insanity defense to the jury.
We begin with the proposition that "[a] party is entitled to present evidence upon the facts that are relevant to his theory of the case, so long as that theory has support in the law." Zamora v. State, 361 So.2d 776, 779 (Fla. 3d DCA 1978).
In the instant case, Sluyter's theory, that he was legally insane at the time of the offenses due to involuntary Halotestin intoxication, finds support in the law. In Brancaccio v. State, 698 So.2d 597 (Fla. 4th DCA 1997), the Fourth District quoted approvingly from an article collecting cases on the defense of involuntary intoxication: "`Generally speaking, an accused may be completely relieved of criminal responsibility if, because of involuntary intoxication, he was temporarily rendered legally insane at the time he committed the offense.'" Id. at 599 (quoting Phillip E. Hassman, Annotation, When Intoxication Deemed Involuntary so as to Constitute a Defense to Criminal Charge, 73 A.L.R.3d 195 (1976)). In Miller v. State, 805 So.2d 885, 887 (Fla. 2d DCA 2001), this court followed Brancaccio, stating:
[W]here the intoxication is involuntary, it typically has been raised in an attempt to prove an insanity defense rather than an intoxication defense. The definition of insanity has been expanded to include those situations in which a person could not distinguish right from wrong as the result of an involuntarily-induced intoxicated state.
The State argues, however, that Sluyter's proffered evidence was properly excluded because it would not have demonstrated that Sluyter met this test for insanity. It is the State's position that Sluyter's intoxication was voluntary and that his actions indicated that he knew the difference between right and wrong. However, the record reveals testimony from which the jury could have reached the opposite conclusion.
The State's argument that Sluyter's intoxication was voluntary, not involuntary, finds no support in the law. Where the intoxicating dose of medication has been prescribed or administered by a *1181 physician, any resulting intoxication is considered to be involuntary. Hassman, supra, § 7(a); see also Boswell v. State, 610 So.2d 670 (Fla. 4th DCA 1992) (concluding that a defendant who was under the influence of Prozac and Xanax as prescribed by a doctor was entitled to an instruction on involuntary intoxication). In the instant case, Sluyter was prescribed Halotestin for a medical condition. There was no indication that he took the wrong dose or that he took the drug improperly. Thus, Gray v. State, 731 So.2d 816 (Fla. 5th DCA 1999), which is cited by the State, has no application to this case since the defendant there ingested illegal nonprescription drugs.
The State also argues that Sluyter's intoxication was voluntary because he voluntarily ingested alcohol while taking the Halotestin, resulting in intoxication. However, Dr. Schaerf's testimony provides evidence from which the jury could have found otherwise. He opined: "And were it not for the Halotestin, it would have never happened, in my opinion. That it never happened before, would never happen again." The doctor's use of the term "Halotestin intoxication" does not invalidate the doctor's opinion regarding Sluyter's sanity. The doctor went on to say that it was the Halotestin that "put him in the mental state where he ended up not being able to appreciate what he was doing." Accordingly, because the drugs ingested here were prescription drugs prescribed by a physician and because Halotestin, not alcohol, caused the intoxication, Sluyter's resulting intoxication must be considered involuntary.
Furthermore, although the State argues that Sluyter's actions indicate that he knew the difference between right and wrong, the record offers evidence contrary to that contention. The portion of the record cited by the State as demonstrating that Sluyter knew the difference between right and wrong is a quote taken from Dr. Schaerf's report in which Dr. Schaerf gave Sluyter's explanation of the offense: "He woke up with a recollection of his daughter touching him and the patient touching his daughter." Also, "[h]e told his daughter it was wrong and told her it cannot be discussed." These comments clearly referred to Sluyter's reactions afterwards, not his awareness of the wrongfulness of the events at the time they were occurring. Moreover, Dr. Schaerf specifically testified that he believed that Sluyter met the Florida test for insanity because he did not know what he was doing at the moment of the offense: "[A]t that specific moment he could not tell right from wrong." Accordingly, the record does not support the State's argument that the evidence was properly excluded on this basis.
Although the State presented evidence that may have contradicted Dr. Schaerf's opinion regarding Sluyter's sanity, the trial court erred in not allowing Sluyter to present his evidence and argue his theory of defense to the jury. See Boswell, 610 So.2d 670. When a defendant has competent evidence to support his theory of defense, the trial court denies the defendant his due process rights guaranteed by the constitution when he is prohibited from presenting that defense to the jury. Washington v. State, 737 So.2d 1208, 1221 (Fla. 1st DCA 1999). Because Dr. Schaerf's testimony specifically provided Sluyter with a basis to present an insanity defense, the trial court erred in precluding the doctor from testifying and in denying Sluyter the opportunity to argue his only defense.
Reversed and remanded for a new trial.
CASANUEVA and WALLACE, JJ., Concur.