FIRST DISTRICT COURT OF APPEAL
STATE OF FLORIDA

_____

No. 1D2022-2062
_____

ALAGABARA AWOLOWO,

    Appellant,

    v.

STATE OF FLORIDA,

    Appellee.

_____

On appeal from the Circuit Court for Alachua County.
Kristine Van Vorst, Judge.

May 22, 2024

ROWE, J.

In *State v. Dortch*, 317 So. 3d 1074, 1080 (Fla. 2021), the Florida Supreme Court posed, but did not answer, this question: "does a trial court's decision to order a psychological evaluation create a *constitutional* entitlement to a subsequent competency hearing, regardless of whether the information available to the trial court met the evidentiary threshold for invoking the rule 3.210 competency procedures in the first place?" This appeal raises the question posed by the supreme court. And we answer it in the negative.

*Facts*

Alagabara Awolowo was charged with (1) leaving the scene of an accident involving injury other than serious bodily injury, (2) resisting an officer with violence, (3) willful or wanton reckless driving, and (4) leaving the scene of an accident with property damage to attended vehicle or other property.

These charges arose out of a car accident caused by Awolowo. Awolowo approached a busy intersection in Gainesville at a high rate of speed, side-swiping a truck before turning into oncoming traffic and hitting another vehicle head on. When law enforcement arrived, they found Awolowo wandering out from the woods beside the road. He was naked and disheveled. The officers described Awolowo's behavior as irrational and belligerent—he yelled and cursed at them. When they tried to ask him about the accident, Awolowo said that he was on his way to his village to deliver paperwork for his king. He also told the officers that he had been raped in the woods.

Defense counsel moved for a competency evaluation under Florida Rule of Criminal Procedure 3.210(b) and section 916.115, Florida Statutes. In the motion, counsel alleged no specific facts about Awolowo's competency. Rather, counsel alleged only that he had "a good faith belief that the Defendant suffer[ed] from mental illness or disability and that as a result he/she may be incompetent to proceed." Judge David P. Krieder appointed an expert to examine Awolowo for competency. Within a month, the expert examined Awolowo, found him competent, and filed her report with the court under seal. The report includes an indication that copies of the written report were provided to defense counsel and to the prosecutor—as required by the court's order appointing the expert. The docket shows that the court ordered payment for the expert.

This is the last reference to Awolowo's competency in the record even though the court gave defense counsel multiple opportunities at case management conferences and at a pretrial hearing to raise any pending issues. Even so, counsel neither sought a hearing on Awolowo's competency nor signaled to the court that a competency determination had not been made. Rather,

counsel proceeded as if Awolowo were competent to proceed to trial. He obtained a waiver of Awolowo's right to be present at a case management hearing and allowed him to turn down the State's plea offer.

Although defense counsel never revisited Awolowo's competency, Awolowo wrote a letter pro se to the court that described his state of mind at the time of the offense. He explained that "what happened to me on 10/31/2020 was Drug/substance induced Psychosis." Awolowo then asserted that his drug-induced psychosis was caused by a medication (cyclobenzaprine) that had been prescribed to him. Awolowo asked that the trial court allow the admission of records and testimony at trial in support of his defense as to his state of mind at the time of the offense. But at no time did Awolowo argue or suggest that he was not competent to proceed to trial.

Soon after, the State filed a motion in limine, expecting that the defense would "try to present evidence that [Awolowo] was under some sort of involuntary delusion or hallucination based on [Awolowo's] medical records and elevated lactic acid levels."

The case proceeded to trial and a new judge—Judge Kristine Van Vorst—presided. Before beginning jury selection, and again before proceeding to trial, Judge Van Vorst asked defense counsel if there were any initial matters that needed to be resolved. Defense counsel did not alert the new judge that he was concerned about Awolowo's competency or inform her that the prior judge never made a competency determination.

During and after jury selection, the record reflects that Awolowo responded politely and directly when addressed by the trial court judge.

At trial, the drivers of the two vehicles hit by Awolowo testified about the accident, their injuries, and the damages to their vehicles. Neither driver saw Awolowo leave the area. But when Officer Keith Carlisle responded to the scene, he discovered Awolowo about 300 yards away from the crash site. Carlisle followed a trail of cash, clothing, and keys to where Awolowo emerged from the woods.

3

Awolowo was covered in dirt and white powder from the airbag that deployed during the crash. Carlisle placed Awolowo in restraints to prevent Awolowo from running away. During the interaction, Awolowo demanded to see Carlisle's credentials, and he asked what heavenly body gave Carlisle authority over him. Officer Ronnie Hartley Jr. helped Carlisle detain Awolowo until an ambulance could take Awolowo to the hospital. Hartley described Awolowo as agitated and combative. Awolowo continued to scream that the officers wanted to kill him until the ambulance took him away.

After a colloquy with the trial court, Awolowo affirmed that he had chosen to testify on his own behalf. Awolowo took the stand to explain that none of his actions were willful or intentional. As he was driving, he noticed his heart beating erratically, and he struggled to breathe. He decided to drive to the hospital, but he thought he blacked out for a bit. The last thing he remembered was trying to avoid hitting a vehicle. He did not remember any of his interactions with the police.

Awolowo responded clearly and politely to all questions posed to him on direct and cross-examination. The record does not reflect any inappropriate behavior by Awolowo or any admonition by the trial court to Awolowo concerning his behavior or communications at trial.

The jury acquitted Awolowo on two of the charges—leaving the scene of an accident involving injury and willful or wanton reckless driving. But the jury found him guilty of resisting arrest without violence and leaving the scene of the accident with property damage.

At sentencing, defense counsel stated that Awolowo was "one of the most nice, kindest individuals" he represented. And Awolowo addressed the court to ask for a minimum sentence. The court sentenced Awolowo to sixty days in jail followed by six months of probation. As a condition of his probation, the court ordered Awolowo to complete a mental health evaluation, but it clarified that the requirement was based on Awolowo's behavior at the time of the accident.

On appeal, Awolowo argues that after appointing an expert to evaluate him, the court fundamentally erred by failing to: conduct a competency hearing, make an oral finding of competency, and enter a written order finding him competent. The State concedes error and asks that this court remand to allow the trial court to make a nunc pro tunc determination of Awolowo's competency to proceed to trial. For the reasons below, we reject this concession and find no fundamental error by the trial court.

*Analysis*

An accused person has a constitutional right not to be tried while incompetent. *See Pate v. Robinson*, 383 U.S. 375, 378 (1966); *Drope v. Missouri*, 420 U.S. 162, 171 (1975). This is because "the conviction of an accused person while he is legally incompetent violates due process." *Pate*, 383 U.S. at 378. When the accused's "mental condition is such that he lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense," the trial may not proceed. *Drope*, 420 U.S. at 171. This prohibition, which existed at common law, recognizes that a mentally incompetent defendant, while physically present in the courtroom, has no meaningful opportunity to defend himself. *Id.*

To protect a defendant's right to not be tried while incompetent, the United States Supreme Court explained that states must provide adequate procedures to safeguard the right. *See Pate*, 383 U.S. at 386–87. The Florida Supreme Court adopted Florida Rule of Criminal Procedure 3.210 as a procedural mechanism to protect the due process right of a defendant not to proceed to trial while incompetent. *See Lane v. State*, 388 So. 2d 1022, 1025 (Fla. 1980); *Dougherty v. State*, 149 So. 3d 672, 677 (Fla. 2014) ("Florida Rules of Criminal Procedure 3.210–3.212 were enacted to set forth the required competency hearing procedures for determining whether a defendant is competent to proceed or has been restored to competency."). The rule requires a trial court "to conduct a hearing for competency to stand trial whenever it reasonably appears necessary, whether requested or not, to ensure that a defendant meets the standard of competency . . . ." *Lane*, 388 So. 2d at 1025.

5

In most cases, defense counsel will raise questions as to defendant's competency and seek an order from the trial court appointing an expert to evaluate the defendant before proceeding to trial. But even when not raised by counsel, a trial court must on its own motion conduct a hearing when there is a "bona fide doubt" as to the defendant's competency to stand trial. *Pate*, 383 U.S. at 385; *Lane*, 388 So. 2d at 1025–26 ("What activates the need for a competency hearing is some type of irrational behavior or evidence of mental illness that would raise a doubt as to the defendant's present competence."). Rule 3.210 provides that when a trial court has reasonable grounds to believe that a defendant is not competent to proceed, the court must hold a hearing, consider expert testimony or reports, and enter a written order. *Dougherty*, 149 So. 3d at 677–78.

But after a trial court has ordered an evaluation of the defendant's competency under rule 3.210, does the defendant then have a **constitutional** right to a hearing on his competency—even if there were no reasonable grounds to question his competency in the first place? The Florida Supreme Court was divided on this question in *Dortch*.

There, the court addressed whether a defendant who entered a plea must secure a trial court order denying a motion to withdraw his plea before he may argue on appeal that the trial court erred by failing to conduct a competency hearing after ordering an evaluation of the defendant's competency. 317 So. 3d at 1075. To be clear, Dortch never alleged a violation of his right to not be tried or convicted while incompetent. *Id.* at 1079. Instead, he argued only that he **may** have been incompetent to proceed. *Id.* He argued that he had a due process right to a competency hearing and a determination of his competency once the trial court ordered a competency evaluation. He asserted that his due process right was violated when the trial court failed to hold a hearing and enter a written order finding him competent before accepting his plea. *Id.* at 1080. And on appeal, he argued that this failure by the trial court amounted to fundamental error. The supreme court disagreed, holding that Dortch failed to preserve the issue because he never moved to withdraw his plea and there was no fundamental-error exception to the preservation requirement. *Id.*

But while deciding Dortch's case on preservation grounds, the court's majority posed this question: "does a trial court's decision to order a psychological evaluation create a *constitutional* entitlement to a subsequent competency hearing, regardless of whether the information available to the trial court met the evidentiary threshold for invoking the rule 3.210 competency procedures in the first place?"[1] *Id.* at 1080. The majority pointed out that the court's earlier decision in *Dougherty* had not settled the question. *Id.* at 1080 n.5:

> This Court's decision in *Dougherty v. State*, 149 So. 3d 672 (Fla. 2014), in which we emphasized the importance of compliance with rule 3.210(b), sheds no light on this issue. The defendant in *Dougherty* had been adjudicated incompetent, and the issue was whether defense counsel could subsequently stipulate that the defendant's competence had been restored. *Id.* at 673.

The *Dortch* dissent addressed the question left unanswered by the majority. *Id.* at 1084. The dissent argued that Dortch suffered a due process violation when the trial court accepted his plea without holding a competency hearing after the court had found a reasonable basis to order a competency evaluation. *Id.* at 1085. The dissent argued that while a trial court has discretion to determine whether there are reasonable grounds to believe that a defendant is not competent to stand trial, it lacks the discretion to find reasonable grounds exist and proceed to the next material stage without making a competency determination. *Id.* at 1085–86. The dissent emphasized that "rule 3.210 and the due process right it

---

[1] The same question was raised and left unanswered by the United States Supreme Court in *Drope*. 420 U.S. at 177–78 ("It is unnecessary for us to decide whether such examination was constitutionally required on the basis of what was then known to the trial court since in our view the question was settled by later events.").

was adopted to protect are meaningless unless they can be enforced." *Id.* at 1086.

*Dortch* is not the only recent decision from the Supreme Court explaining the limited reach of *Dougherty. In Santiago-Gonzalez v. State*, 301 So. 3d 157, 175 (Fla. 2020), the Florida Supreme Court clarified that a trial court's failure to enter a written order on the defendant's competency—if not brought to the trial court's attention—should "be remediable on appeal only if the failure constitutes fundamental error." The Court explained that *Dougherty* had not addressed the fundamental error standard of review. *Id.* at n.5. The Court then emphasized that fundamental error "must amount to a denial of due process, and consequently, should [only] be found to apply where prejudice follows." *Id.* at 175 (citing *Calloway v. State*, 210 So. 3d 1160, 1191 (Fla. 2017)).

We acknowledge that this court has relied on *Dougherty* as authority for reversing and remanding for retroactive competency hearings and determinations when a trial court has ordered an evaluation of the defendant but failed to hold a competency hearing or to make a written determination on the defendant's competency. *See, e.g.*, *Perez v. State*, 236 So. 3d 1158 (Fla. 1st DCA 2018) (reversing and remanding for a retroactive competency determination when the court ordered a psychiatric evaluation but never held a hearing); *Pearce v. State*, 250 So. 3d 791 (Fla. 1st DCA 2018) (reversing and remanding for a retroactive competency determination when the court failed to conduct a competency hearing); *Sheheane v. State*, 228 So. 3d 1178 (Fla. 1st DCA 2017) (reversing and remanding for a retroactive competency determination when the court set a hearing date on competency, but the hearing never occurred); *Walker v. State*, 237 So. 3d 1162 (Fla. 1st DCA 2018) (same); *English v. State*, 229 So. 3d 1274 (Fla. 1st DCA 2017) (same). In those cases, we held that the trial court's failure to hold a competency hearing and make a competency determination amounts to fundamental error. *See Zern v. State*, 191 So. 3d 962, 965 (Fla. 1st DCA 2016) ("Because an independent competency finding is a due-process right that cannot be waived once a reason for a competency hearing has surfaced, the trial court fundamentally erred in failing to make such a finding.").

8

Despite these decisions from our court, the supreme court's decisions clarifying the law in *Santiago-Gomez* and *Dortch*—that *Dougherty* did not address fundamental error and that it "shed no light" on whether ordering a psychiatric evaluation created a constitutional entitlement to a competency hearing—demonstrate that our reading of *Dougherty* was too broad.[2] *See Thompson v. State*, 341 So. 3d 303, 306 (Fla. 2022) (explaining that there is an exception to the law-of-the-case doctrine for intervening changes of controlling law); *Jackson v. State*, 333 So. 3d 740, 744 (Fla. 1st DCA 2021) (same). We conclude that our interpretation of *Dougherty* missed the mark in those prior decisions. At least when we found that the trial court fundamentally erred by failing to hold a competency hearing or make a written determination of competency after ordering a competency evaluation **when the trial court did not have reasonable grounds to question the defendant's competency in the first place**.

We acknowledge that in several cases after the publication of *Santiago-Gonzalez* and *Dortch,* our court continued to reverse for fundamental error when a trial court failed to enter an order on competency after granting a rule 3.210 motion. But in those cases,

---

[2] Our expansive reading of *Dougherty* may have been misguided from the start. The *Dougherty* majority explained that Dougherty's claim that he was incompetent to proceed to trial was procedurally barred on postconviction relief and that he should have raised the claim on direct appeal. 149 So. 3d at 676. Even so, while recognizing that it could not address the "application of [its] holding to the specific circumstances of [Dougherty's] case," the court went on to "resolve the conflict . . . to stress the importance of competency determinations to criminal proceedings and to ensure that courts follow the specific procedures outlined in Florida Rules of Criminal Procedure 3.210–3.212." *Id.* As Justice Canady explained in his dissent, the majority opinion was pure dicta because Dougherty's incompetency claim was not cognizable on appeal. *Id.* at 680 ("The majority's discussion of the incompetency issue—which is the basis of our conflict jurisdiction—thus constitutes an abstract legal discussion that has no application to the case on review.").

this court accepted the State's concessions of error without examining the holdings of *Santiago-Gonzalez* and *Dortch*. *See Thomas v. State*, 351 So. 3d 197, 204 (Fla. 1st DCA 2022); *Diamond v. State*, 344 So. 3d 529, 530 (Fla. 1st DCA 2022). So while these decisions were intervening, they do not control the outcome of this case. *See Physicians Med. Ctrs. v. Allstate Fire & Casualty Ins. Co.*, 335 So. 3d 1284, 1289 (Fla. 1st DCA 2022) (explaining that stare decisis applies when an issue of law was heard and decided, not when an issue has been ignored by the court); *Wanless v. State*, 271 So. 3d 1219, 1223 (Fla. 1st DCA 2019) ("We are of course bound to follow our decisions unless and until an intervening decision from the Florida Supreme Court, the United States Supreme Court, or this court sitting en banc compels otherwise.").

Having reconsidered *Dougherty* and our prior decisions relying on the same, we now turn to this case. Awolowo argues that he had a *constitutional* right to a competency hearing and written order by the trial court once the trial court ordered an evaluation of his competency. What's more, he argues that the prohibition against double jeopardy precludes the State for retrying him on the two counts for which he obtained an acquittal—even while also arguing that the trial was a nullity because of the trial court's alleged error in failing to make a determination of his competency.

To be clear, Awolowo does not argue that he was actually incompetent. Rather, he raises the question left unanswered by the *Dortch* majority: is there a *constitutional* right to a competency hearing and determination when the trial court has ordered a competency evaluation—when the information available to the trial court did not meet the required threshold for invoking the rule 3.210 competency procedures in the first place? We answer the question in the negative.

Awolowo did not object at trial to the lack of a competency hearing or determination. Because he did not preserve the issue by objection, we review his argument only for fundamental error. Fundamental error must amount to a denial of due process, and consequently, should be found to apply only when prejudice follows. *See Calloway*, 210 So. 3d at 1191; *Profit v. State*, 49 Fla. Law Wkly. D201 (Fla. 1st DCA Jan. 17, 2024) ("A fundamental error must result in prejudice.").

10

Fundamental error will only arise from a trial court's failure to make a determination of the defendant's competency when the record shows there were reasonable grounds to believe that the defendant was incompetent to proceed. It is the violation of the right not to be tried when there are reasonable grounds to question the defendant's competency—not the right to have a hearing and competency determination—that deprives a defendant of due process. And so, when the record does not show reasonable grounds for the trial court to have believed that the defendant was incompetent to proceed, the trial court does not fundamentally err by failing to hold a competency hearing and failing to enter a written order on the defendants' competency. This is so even if the trial court has ordered an expert evaluation of the defendant's competency.

And as we will explain, the trial court did not fundamentally err because nothing in the rule 3.210 motion, nothing in the trial court's order on that motion, and nothing else in the record[3] shows that Awolowo was not competent to proceed. Quite the opposite.

---

[3] We emphasize that rule 3.210(b)(1) does not require defense counsel or the court to meet an **evidentiary** standard when moving for or ordering an evaluation of the defendant's competency to proceed to trial. Rather, rule 3.210(b)(1) plainly requires the trial court to consider "information available . . . at the relevant time in the proceedings." "[T]he 'reasonable ground' test is an objective one that looks at **the information available to the trial court at the relevant time in the proceedings**." *Dortch*, 317 So. 3d at 1080 (emphasis supplied). Under the rule, defense counsel must recite facts in the motion that would support counsel's belief that there are reasonable grounds to doubt the defendant's competency—unless disclosing such facts would invade the attorney-client privilege. Thus, when reviewing whether a trial court fundamentally erred by not entering an order on competency, the appellate court reviews the record for information that would show reasonable grounds to order an evaluation of the defendant's competency.

11

First, the motion. Defense counsel's motion did not provide a factual basis for his assertion that there were reasonable grounds to believe Awolowo was incompetent. When defense counsel moved for an evaluation of Awolowo's competency, his motion included no factual allegations to support the request. Counsel alleged only that he had "a good faith belief that the Defendant suffer[ed] from mental illness or disability and that as a result he/she may be incompetent to proceed." Counsel's boilerplate motion was not nearly enough to raise reasonable grounds to believe that Awolowo was incompetent. Rather, under the rule, it was counsel's duty to inform the court of the facts supporting his belief that Awolowo was not competent to stand trial. *See, e.g.*, *Brooks v. State*, 180 So. 3d 1094, 1095 (Fla. 1st DCA 2015) (holding that a defendant was entitled to a competency hearing after defense counsel filed a motion alleging that the defendant exhibited inappropriate behavior, appeared disoriented as to time and place, could not aid in his defense, did not appreciate the nature of the charges against him or the possible penalties, talked to himself, and was paranoid). Rule 3.210 requires—as long as it does not invade privileged communications—that defense counsel's motion "shall contain a recital of the specific observations of and conversations with the defendant that have formed the basis for the motion." Fla. R. Crim. P. 3.210(b)(1).

Second, the order. The trial court's order appointing an expert to evaluate Awolowo recites no facts or circumstances that would provide reasonable grounds to believe the defendant was incompetent to proceed. The order did not state that the trial court had reasonable grounds to believe that Awolowo was incompetent to proceed. Instead, the court used a form order with pre-printed information and blank spaces that could be marked. The order recites no facts about Awolowo's behavior or mental condition. Instead, the form order merely notes that the matter was before the court on defense counsel's motion and that the trial court appointed an expert to evaluate the defendant's competency to proceed.

Third, the record. Awolowo has never been found incompetent to proceed in the past. *Cf. Maxwell v. State*, 309 So. 3d 716, 717 (Fla. 1st DCA 2021) (reversing for a retroactive competency determination when the defendant had previously been found

12

incompetent to stand trial); *Bowden v. State*, 279 So. 3d 311, 313 (Fla. 1st DCA 2019) (holding that a defendant who had previously been declared incompetent was entitled to a competency hearing); *Davis v. State*, 277 So. 3d 1111, 1113 (Fla. 1st DCA 2019) ("Once found incompetent, a presumption clings to the criminal defendant that the state of incompetence persists until a court, after proper notice and a hearing, finds otherwise." (quoting *Molina v. State*, 946 So. 2d 1103, 1105 (Fla. 5th DCA 2006))).

The court-appointed psychologist who evaluated Awolowo found that he was competent to proceed. The expert's report was filed with the trial court, with copies provided to defense counsel and the State. In her report, the evaluating psychologist observed that Awolowo was "a 52-year-old male, who was alert, cooperative, and fully oriented." She also found that his "speech and thought process were coherent and relevant" and that he was not suffering from delusions. Awolowo understood the charges against him and their severity. He also showed an adequate understanding of the legal process. The psychologist observed that Awolowo could make decisions about his defense options with help from his attorney. She concluded that Awolowo "presented with no signs or symptoms of mental illness that pose a barrier to proceeding with his case" and that he did "not appear to meet diagnostic criteria for any mental health disorder."

Fourth, Awolowo's conduct at trial and sentencing also point toward his competency. Indeed, Awolowo gave no indication at trial that he was incompetent to proceed. Awolowo was engaged and politely responded to all questions posed to him by the trial court during the colloquies at jury selection and before he testified in his defense. During his testimony, Awolowo directly answered all questions posed to him by his counsel and by the prosecutor on cross-examination. There is not one indication anywhere in the record as to any outburst or other inappropriate behavior by Awolowo before the trial, during the trial, or at sentencing. *Cf. Reynolds v. State*, 177 So. 3d 296, 297 (Fla. 1st DCA 2015) (holding that the trial court erred in failing to hold a competency hearing after defense counsel detailed concerns about the defendant's competency and after the defendant "continued to insist upon entering an open plea to the trial court even though counsel had told him several times that the court would have to impose a longer

sentence if he entered an open plea than it would if Appellant accepted the State's plea offer").

The record shows that the only time Awolowo exhibited any concerning behavior was at that time of the offense—two years before trial. Awolowo's erratic behavior at the crime scene may have been relevant to his defense at trial—his pro se letter seeking admission of medical records on a potential drug reaction at the time of the crime suggests that was the case here. *See Sluyter v. State*, 941 So. 2d 1178, 1180 (Fla. 2d DCA 2006) ("In Florida, the test for insanity as a defense to a criminal charge is whether at the time of the offense the defendant had a mental infirmity, disease, or defect and, as a result, did not know what he was doing or did not know what he was doing was wrong." (quoting *Fisher v. State*, 506 So. 2d 1052, 1054 (Fla. 2d DCA 1987))).

Even so, a trial court's determination on whether a defendant is competent to proceed focuses on the defendant's mental capacity at the time of trial, not at the time of the offense. *See Peede v. State*, 955 So. 2d 480, 488 (Fla. 2007) ("The test for whether a defendant is competent to stand trial is 'whether he has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him.'" (quoting *Dusky v. United States*, 362 U.S. 402, 402 (1960))). And "not every manifestation of mental illness demonstrates incompetence to stand trial; rather, the evidence must indicate a present inability to asset counsel or understand the charges." *Noetzel v. State*, 328 So. 3d 933, 947 (Fla. 2021) (internal citation omitted).

Because nothing in the rule 3.210 motion, nothing in the trial court's order appointing an expert, and nothing in the record provided reasonable grounds to believe that Awolowo was incompetent to proceed, the trial court did not fundamentally err by failing to conduct a competency hearing and failing to enter a written determination of competency. Because no information provided reasonable grounds for the trial court to believe Awolowo was incompetent to proceed, Awolowo had no due process—read **constitutional**—right to a competency hearing or determination by the court. Put differently, any error in the trial court's failure to hold a hearing or make a determination of Awolowo's

14

competency did not rise to the level of fundamental error. *See Knight v. State*, 286 So. 3d 147, 151 (Fla. 2019) (explaining that to establish fundamental error, an appellant must show that the trial court's error "'necessarily and inescapably produced the ultimate jury verdict' and that the error 'permeate[d] or saturate[d] the trial' with 'basic invalidity'") (citing *Brown v. State*, 124 So. 2d 481, 484 (Fla. 1960)).

Before concluding, we pause to note how often unpreserved errors relating to competency determinations are raised on appeal. *See, e.g.*, *Hicks v. State*, 1D2022-0701 (arguing that the trial court erred by failing to hold a competency hearing); *Davis v. State*, 1D2021-3341 (same); *see also Thomas v. State*, 351 So. 3d 197 (Fla. 1st DCA 2022) (reversing for a nunc pro tunc competency evaluation); *Diamond v. State*, 344 So. 3d 529 (Fla. 1st DCA 2022) (same); *Ellis v. State*, 328 So. 3d 1036 (Fla. 1st DCA 2021) (same). We remind counsel that when a trial court has ordered a competency evaluation of the defendant, as an officer of the court, counsel has a duty to bring to the trial court's attention the need for a competency hearing and determination. *See Castor v. State*, 365 So. 2d 701, 703 (Fla. 1978) (explaining that the contemporaneous objection rule "places the trial judge on notice that error may have been committed, and provides him an opportunity to correct it at an early stage of the proceedings").

Defense counsel had that chance here. Defense counsel moved for an evaluation of Awolowo's competency and received an expert report finding him competent to proceed. Then, when the case went to trial before a new judge, and the new judge asked if there were any pending matters requiring the court's attention, defense counsel replied, "I can't think of anything at the moment that's an issue before the Court." And not once during the trial or at sentencing did counsel alert the trial court that no order on Awolowo's competency had been entered.

Defense counsel, when raising concerns about a defendant's competency, must be conscientious in bringing an issue of competency before the trial court and preserving the issue for appeal. *See State v. Clark*, 373 So. 3d 1128, 1131 (Fla. 2023) ("Parties are required to preserve arguments because it allows the lower tribunal to consider and resolve errors when they arise,

15

rather than wait for the process of an appeal and expend the judicial resources that come with that procedure."); *Jones v. State*, 571 So. 2d 1374, 1376 n.3 (Fla. 1st DCA 1991) ("We do not want to encourage the creation of 'gotchas' whereby the defense is allowed to sit on its rights, saying nothing until after it sees whether the jury returns an adverse verdict.").

AFFIRMED.

B.L. THOMAS, J., concurs; BILBREY, J., dissents with opinion.

_____

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

_____

BILBREY, J., dissenting.

Alagabara Awolowo challenges his judgment and sentence for two misdemeanor offenses after the jury found him guilty of the lesser included offenses of leaving the scene of a traffic accident with property damage and resisting law enforcement officers without violence. Rather than reversing and remanding for further proceedings on the competency issue, as conceded by the State, the majority affirms.[1] In doing so, it imposes a requirement to establish fundamental error found nowhere in rule 3.210(b)(1), Florida Rules of Criminal Procedure, and holds contrary to recent cases from this court. As a result, I respectfully dissent.

Rule 3.210(b)(1), states:

A written motion for the examination made by counsel for the defendant shall contain a certificate of counsel that the motion is made in good faith and on reasonable grounds to believe that the defendant is incompetent to proceed. To the extent that it does not

---

[1] I agree with affirming on the evidentiary and costs issues raised by Awolowo.

16

invade the lawyer-client privilege, the motion shall contain a recital of the specific observations of and conversations with the defendant that have formed the basis for the motion.

"Specific observations of and conversations with" a defendant is more limited than the all-factual-basis-to-support-the-motion requirement the majority imposes. Rule 3.210(b)(1) requires only things seen and heard by a defendant's counsel, and only if they can be provided without violating attorney-client privilege. In contrast, when the State seeks to have a defendant examined for competency, its motion "shall include a recital of the specific facts that have formed the basis for the motion, including a recitation of the observations of and statements of the defendant that have caused the state to file the motion." Fla. R. Crim P. 3.210(b)(2). The majority opinion imposes a requirement on a defendant's counsel that exceeds the requirements in the Rules of Criminal Procedure and is more akin to what is required for the State.

The same is true for trial court's order granting Awolowo's counsel's motion and appointing an expert to examine Awolowo's competency to proceed. Rule 3.210(b)(4) lists requirements for any order appointing experts. A factual basis is not required to be included in the order, and again the majority imposes a requirement that is not found in the Rules of Criminal Procedure.[2]

_____

[2] One fact that distinguishes the record here from many other cases is that there is no detailed arrest report. Rather, the document that initiated the charges against Awolowo was a Florida uniform traffic citation that lacked a narrative of the alleged crimes. The majority opinion discusses all the events that took place after the crash that raised issues of Awolowo's competency. In many cases, these details would have been in the arrest report, which in turn would have been included the record before the trial court, providing a detailed factual basis to show reasonable grounds to believe a defendant was incompetent. But nothing in the record here shows that the trial court was aware until after it entered the order appointing an expert of the detailed factual basis, as discussed by the majority, to question Awolowo's competency. The trial court did have Awolowo's counsel's motion

17

The record contains a pretrial motion by Awolowo's counsel for the appointment of an expert to evaluate Awolowo's competency to proceed, filed under rule 3.210(b)(2). The trial court's order appointing an expert is also in the record. The expert's confidential report was then filed, and the expert's opinion in the report was that Awolowo was competent to proceed. But there is no record of any hearing held as required by rule 3.212, Florida Rules of Criminal Procedure, or a written or oral finding by the trial court on Awolowo's competence to proceed before the trial.

Under these circumstances, the trial court was required by rule 3.212(b) to "consider the issue of the defendant's competence to proceed." Then "[i]f the court finds the defendant competent to proceed, the court shall enter its order so finding and shall proceed." Fla. R. Crim. P. 3.312(b). The trial court's failure to do so constitutes fundamental error. *See Zern v. State*, 191 So. 3d 962, 965 (Fla. 1st DCA 2016) (footnote omitted) ("Because an independent competency finding is a due-process right that cannot be waived once a reason for a competency hearing has surfaced, the trial court fundamentally erred in failing to make such a finding.").

If nothing in the record shows that a competency hearing took place, this court must reverse and remand "for a retroactive determination of competency, if possible." *Kellond v. State*, 291 So. 3d 1278, 1278 (Fla. 1st DCA 2020). "Where, as here, psychologists opined regarding the defendant's competency but the trial court merely failed to conduct a hearing and make the determination, the court may make a retroactive determination as to the defendant's competency." *Evans v. State*, 353 So. 3d 1261, 1262 (Fla. 2d DCA 2023). "If the court finds that [the defendant] was competent at the time of trial, it must enter a *nunc pro tunc* order

stating, "The undersigned Counsel has a good faith belief that the Defendant suffers from mental illness or disability and as a result he/she may be incompetent to proceed." Contrary to the majority's assertion, that was all that was required by rule 3.210(b)(2) to be in the motion, and per rule 3.210(b)(4), no recitation of a factual basis had to be in the order either.

memorializing that finding with no change in the judgment or sentence." *Kellond*, 291 So. 3d at 1278–79. If, on remand, a trial court finds that a defendant was incompetent to proceed, the defendant is entitled to a new trial if and when competent to proceed. *Id.* at 1279.

The majority does not dispute that the trial court erred in not conducting a competency hearing. Instead, the majority opines that the Florida Supreme Court decisions in *Santiago-Gonzalez v. State*, 301 So. 3d 157 (Fla. 2020), and *State v. Dortch*, 317 So. 3d 1074 (Fla. 2021), have changed the legal landscape. As a result, according to the majority, we are no longer bound by *Zern* and subsequent cases in which we held that fundamental error occurs when a trial court does not make an independent competency determination when faced with a question of a defendant's competency. But nowhere in *Santiago-Gonzalez* or *Dortch* did the Florida Supreme Court expressly overrule or even mention *Zern* and our line of cases following it. And after the opinions in *Santiago-Gonzalez* and *Dortch* were issued by the Florida Supreme Court we have continued to cite *Zern* with approval. *See Thomas v. State*, 351 So. 3d 197, 204 (Fla. 1st DCA 2022); *Diamond v. State*, 344 So. 3d 529, 530 (Fla. 1st DCA 2022).[3]

In *Thomas*, the defendant's competency was questioned pretrial, and an expert was appointed to evaluate the defendant's competency. *Id.* at 203 The opinion cited *Zern* among other cases in unanimously holding that fundamental error occurred when Thomas was tried without having been found competent to proceed. *Id.* at 204. Unlike here, we accepted the State's stipulation that remand for a *nunc pro tunc* competency determination was required. We reached the same conclusion in *Diamond* where we also cited *Zern*. *Diamond*, 344 So. 3d at 530.

---

[3] Other district courts have cited *Zern* with approval well after the opinions in *Santiago-Gonzalez* and *Dortch* were issued. *See Evans v. State*, 353 So. 3d 1261, 1262 (Fla. 2d DCA 2023); *Washington v. State*, 355 So. 3d 482, 485 (Fla. 2d DCA 2023); *Jones v. State*, 48 Fla. L. Weekly D50, 2022 WL 17997539, \*1 (Fla. 5th DCA Dec. 30, 2022); *Goonewardena v. State*, 347 So. 3d 1273, 1277 (Fla. 5th DCA 2022).

19

In *Diamond*, we also accepted the State's concession of error. *Id.* at 529.

Both *Thomas* and *Diamond* were decided after the decisions in *Santiago-Gonzalez* and *Dortch,* and we are required to follow our previous decisions. *See Sims v. State.* 260 So. 3d 509, 514 (Fla. 1st DCA 2018) ("Each panel decision is binding on future panels, absent an intervening decision of a higher court or this court sitting en banc."). Given that *Thomas* and *Diamond* were decided after *Santiago-Gonzalez* and *Dortch*, the Florida Supreme Court cases were not intervening decisions.[4]

Even if not bound by *Thomas* and *Diamond*, we should continue to apply the holding in *Zern* that "[a] criminal defendant has a procedural due process right to the observance of procedures adequate to protect his or her right not to be tried or convicted while incompetent to stand trial." *Id.* at 964 (citing *Dougherty v. State*, 149 So. 3d 672, 676 (Fla. 2014) (quoting *Drope v. Missouri*, 420 U.S. 162, 172 (1975))). *Zern* does not require proof of actual incompetence for a due process right to apply. Rather, due process requires compliance with adequate procedures as given in rule 3.210 through 3.212. *Zern*, 191 So. 3d at 964; *see also Dougherty v. State,* 149 So. 3d 672, 679 (Fla. 2014) (holding that a trial court's failure to comply with the Florida Rules of Criminal Procedure on competency "deprives a defendant of his due process right to a fair trial").[5]

---

[4] The majority opinion contends that *Thomas* and *Diamond* were not intervening decisions because we did not consider *Santiago-Gonzalez* or *Dortch* in accepting the State's concession of error. "A confession of error, however, is not binding upon an appellate court . . . and it is the practice of Florida appellate courts not to accept erroneous concessions by the state." *Perry v. State*, 808 So. 2d 268, 268 (Fla. 1st DCA 2002) (citations omitted). If *Zern* and many other cases had been overruled sub silentio by *Santiago-Gonzalez* or *Dortch*, we could have and should have said so in *Thomas* and *Diamond* before accepting the concession of error.

[5] We are bound by *Dougherty*, *see Hoffman v. Jones*, 280 So. 2d 431, 434 (Fla. 1973), since the Florida Supreme "Court does not

20

Turning to *Santiago-Gonzalez*, because the trial court there made competency findings, the facts there are distinguishable. *Id.* at 175. "Given the trial court's oral competency findings in this case, which is fully supported by the record, Santiago-Gonzalez has not demonstrated fundamental error and is therefore not entitled to relief on this issue." *Id.* There, the oral findings satisfied due process since due process requires "both fair notice and a real opportunity to be heard." *Keys Citizens for Responsible Gov't, Inc. v. Fla. Keys Aqueduct Auth.*, 795 So. 2d 940, 948 (Fla. 2001); *see also Fuentes v. Shevin*, 407 U.S. 67, 90 (1972). In *Santiago-Gonzalez* the issue of competency was heard by the trial court, thereby satisfying the procedural due process requirement. Here, there were no findings on Awolowo's competency, oral or written, so a due process violation occurred.

As for *Dortch*, it is also distinguishable. The holding in *Dortch* was "that there is no fundamental-error exception to the preservation requirement of rule 9.140(b)(2)(A)(ii)(c)" in the Florida Rules of Appellate Procedure. *Dortch*, 317 So. 3d at 1084. This subsection of the rules concerns the limited circumstances under which a defendant may appeal following a guilty or no contest plea. In contrast, Awolowo is appealing a "final judgment adjudicating guilt" under rule 9.140(b)(1)(A). That subsection applies to any final judgment where guilt has been determined and does not have the preservation requirement applicable to appeals from pleas.

In conclusion, regardless of the distinguishable opinions in *Santiago-Gonzalez* and *Dortch*, we should continue to follow *Zern*, *Taylor*, and *Diamond*, as well as many other cases from this court and other district courts. *Zern* and the cases that follow it correctly hold it is a due process violation, and therefore fundamental error, to fail to conduct a competency hearing after questions of a defendant's competency have been raised in the trial court. Since the majority disregards our well-reasoned cases, I respectfully dissent.

---

intentionally overrule itself sub silentio." *Puryear v. State*, 810 So. 2d 901, 905 (Fla. 2002).

_____

Jessica J. Yeary, Public Defender, and Danielle Jorden, Assistant Public Defender, Tallahassee, for Appellant.

Ashley Moody, Attorney General, and Daren L. Shippy, Assistant Attorney General, Tallahassee, for Appellee.